No. 01-494

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 77

STATE OF MONTANA

Plaintiff and Respondent,

v.

RUSTY KERN

Defendant and Appellant.

APPEAL FROM:      District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DC 99-920
The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard J. Carstensen, Billings, Montana

For Respondent:

Mike McGrath, Montana Attorney General, Brian M. Morris, Solicitor,
Helena, Montana; Dennis Paxinos, Yellowstone County Attorney, Billings,
Montana

Submitted on Briefs:  September 5, 2002

Decided:   April 10, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     On December 13, 2000, Rusty Kern was convicted of sexual assault.  Kern was ultimately sentenced to fifteen years in the Montana State Prison, with eight years suspended.  Kern does not challenge his conviction, but he does challenge the charging documents and the legality of his sentence.  We affirm.

## ISSUES

¶2     A restatement of the issues Kern presents on appeal follows:

1.  Whether probable cause was established for the filing of the information absent allegations of touching by the defendant for the purpose of sexual gratification;

2.  Whether the information charged facts sufficient to constitute the crime alleged absent allegations of touching by the defendant for the purpose of sexual gratification;

3.   Whether the State followed statutory requirements in amending the information; and

4.   Whether Kern's sentence of fifteen years in prison with eight years suspended was correct.

## FACTUAL AND PROCEDURAL BACKGROUND

## PRE-TRIAL BACKGROUND

¶3     In August 1997, seven-year-old J.S. and her younger brother, D.S., moved into an apartment in Billings with their mother and Kern.  When J.S.'s mother worked late shifts or weekends, Kern sometimes cared for the children.  On a number of these occasions, Kern compelled J.S., a minor girl, to touch and rub his penis until he ejaculated.  J.S. described

scenarios in which Kern removed the blanket that covered the family's birdcage, draped the blanket over his lap, and placed his penis through a hole in the blanket. While he lay on the couch, with his penis exposed, Kern would order J.S. to "touch it."

¶4 These assaults began in the fall of 1997 and continued until sometime in 1999. During this period, J.S. kept the abuse a secret, as Kern had ordered her to. Kern had warned J.S. that he would kill her mother if she revealed the secret masturbation sessions and he went to jail. J.S. first disclosed the abuse during a visit with her father and his family in Wyoming in 1999. At that time, she told her paternal grandmother that "Rusty [Kern] made me touch his wienie."

¶5 J.S.'s grandmother relayed the allegations of sexual abuse to her son, J.S.'s father. He promptly reported the allegations to law enforcement authorities in Wyoming. They began an investigation and contacted the Billings Police Department. On November 30, 1999, the State of Montana filed an information against Kern, charging him with six offenses. Those offenses included: one count of felony sexual assault; three counts of felony assault; and two counts of misdemeanor child endangerment (involving J.S.'s younger brother, D.S.).

¶6 On March 22, 2000, the State filed its first amended affidavit and motion to amend the information. The State combined the two child endangerment charges involving J.S.'s younger brother, D.S., into a single felony assault charge.

3

¶7     The State amended the information again on June 15, 2000. This second amended information reduced the charges to a single count of felony sexual assault involving J.S. and a single count of felony assault involving D.S.

¶8     Finally, the State filed its third and last amended information on September 26, 2000. This third amended information retained the charge of felony sexual assault involving J.S., but reduced the charge involving D.S. from felony assault to misdemeanor child endangerment.

## PRE-SENTENCE PROCEEDINGS

¶9     On December 13, 2000, after a three-day trial, Kern was found guilty of sexually assaulting J.S. (Count One). He was acquitted on the child endangerment charge involving D.S. (Count Two). Subsequent to the guilty verdict, the court ordered the Department of Corrections (DOC) to prepare a Pre-sentence Investigation (PSI), including a psychological evaluation, in preparation for sentencing. Michael D. Sullivan, M.S.W., conducted the evaluation of Kern.

¶10    In the PSI, Sullivan determined that Kern posed a moderate--or level 2--risk. He found that Kern was not motivated by a strong sexual attraction to children (pedophilia interests), but by the desire for power and control. Sullivan advised that the least restrictive option viable for the defendant would be out-patient sex offender treatment in a pre-release setting. He concluded that such a situation would afford the appropriate level of structure and supervision to manage the risk posed by Kern. He felt Kern would likely be successful within those parameters.

4

**SENTENCING**

¶11 Kern's sentencing hearing was originally set for March 20, 2001. However, DOC had not yet completed Kern's PSI, so the District Court continued Kern's sentencing hearing until March 27, 2001. On that date, Kern requested that his sentencing hearing be continued. The sentencing hearing was finally conducted on April 10, 2001.

¶12 At the conclusion of the sentencing hearing, at which J.S.'s grandmother and Sullivan testified for the State, the District Court announced its sentence orally: Kern was committed to DOC for 15 years for placement in an appropriate institution, with eight years of the term suspended. Kern had supplied a memorandum for sentencing that included copies of affidavits, informations, and sentences of eight other defendants convicted of sexual assault in the same District Court, all of whom received lesser sentences.

¶13 At a hearing on May 22, 2001, the State made an oral motion to have the District Court clarify its sentence. The State advised the District Court that Montana law requires that any sentence specifying commitment to DOC suspend all but five years of the commitment. Section 46-18-201(3)(d)(i), MCA(1999). The State urged the District Court to convert the commitment to DOC to a commitment to the state prison, where a sentence of 15 years with eight years suspended would be legal. In contrast, Kern argued that the District Court should correct the error in its initial sentence, pursuant to § 46-18-117, MCA (1999), by revising the suspended portion to include all but five years.

¶14 The District Court held another hearing on May 29, 2001, at which the State and Kern again presented their arguments about how the District Court should correct its original

5

sentence. The District Court concluded that it had imposed an illegal sentence and, following the State's recommendation, revised the sentence to mandate Kern's imprisonment in the state prison for a term of fifteen years with eight years suspended.

¶15 On June 7, 2001, the District Court entered its Judgment and Commitment and Order Suspending Sentence, reflecting Kern's revised sentence.

## DISCUSSION

## ISSUE ONE

¶16 **Was probable cause established for the filing of the information absent allegations of touching by the defendant for the purpose of sexual gratification?**

¶17 In determinations of probable cause, we review for abuse of discretion. *State v. Arrington* (1993), 260 Mont. 1, 6-7, 858 P.2d 343, 346 (citing *State v. Bradford* (1984), 210 Mont. 130, 139, 683 P.2d 924, 928-29). The evidence necessary to establish probable cause is defined by Montana case law:

> An affidavit in support of a motion to file an information need not make out a prima facie case that a defendant committed an offense. A mere probability that he committed the offense is sufficient. Similarly, evidence to establish probable cause need not be as complete as the evidence necessary to establish guilt . . . the determination whether a motion to file an information is supported by probable cause is left to the sound discretion of the trial court.

*Arrington*, 260 Mont. at 6-7, 858 P.2d at 346.

¶18 The State's affidavit in support of its motion to file an information presents a sufficient case for the establishment of probable cause. As set forth in the contested affidavit, the victim, J.S., reported to law enforcement investigators that:

6

Defendant forced her to touch his penis on numerous occasions, starting from the time her mother moved in with Defendant and not ending until she moved away from Defendant. J.S. stated Defendant would often have her watch movies with naked men and women in them. J.S. stated that when Defendant forced her to touch him, he would make her touch him until 'white stuff' came out of his penis. She also stated that he would cover his clothing with the birdcage cover, and place his penis through a hole that was cut in the cover. She described his penis going from soft to hard until 'white gooey stuff' came out.

These factual allegations clearly establish probable cause that the defendant, Kern, "knowingly subject[ed] another person to . . . sexual contact without consent" in violation of § 45-5-502, MCA (1999). The District Court did not abuse its discretion in holding that the affidavit alleged facts sufficient to establish "a mere probability" that Kern committed the offense.

¶19 Moreover, Kern's argument that the State failed to establish probable cause relies on a misinterpretation of the applicable law. Here, we review the District Court's conclusions *de novo* to determine whether it correctly interpreted the law. *State v. Steffes* (1994), 269 Mont. 214, 231, 887 P.2d 1196, 1206. On this point, while our analysis is different from that relied on by the District Court, our conclusion is the same and we affirm.

¶20 Kern argues that an affidavit to establish probable cause for sexual assault must include allegations that the *defendant* touched another and that he did so for the purpose of arousing or gratifying his own sexual desire or that of another party.

¶21 Section 45-5-502, MCA (1999), defines the crime of sexual assault:

(1) A person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual assault.

7

¶22 Section 45-2-101(66), MCA (1999), provides a statutory definition for sexual contact:

> 'Sexual contact' means touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely: (a) cause bodily injury to or humiliate, harass, or degrade another, or (b) arouse or gratify the sexual response or desire of either party.

**A. Does an affidavit to establish probable cause under § 45-5-502, MCA, require allegations that the defendant committed the touching?**

¶23 Kern incorrectly construes these statutes to require that the *defendant touch another*. Thus, he argues, there was no probable cause to charge him with sexual assault because he never touched J.S. Rather, he asserts, *the minor child touched him*. However, contrary to the statutory construction offered by Kern, the language of the relevant statutes does not evince any requirement that the defendant commit the touching himself. The statute clearly states that one commits the crime of sexual assault if he "subjects another person to any sexual contact." Section 45-5-502, MCA. "Sexual contact" is defined as the "touching of the sexual or other intimate parts of the person of another." Section 45-2-101(66), MCA. Nothing in the statutory language requires that the defendant commit the actual touching. Clearly, there was sexual contact between Kern and the minor child: she touched his penis and masturbated him to the point of ejaculation. She was far too young to consent to this kind of contact. Thus, Kern subjected her to this sexual contact without consent.

¶24 While we do not believe this statute is ambiguous, we nonetheless note that this Court has previously interpreted the legislative intent behind the sexual assault provision and concluded it supports a broad statutory reading. In *State v. Weese* (1980), 189 Mont. 464, 616 P.2d 371, we said:

8

> It appears to us that the policy behind our sexual assault statute is to criminalize and punish sexual or intimate impositions that do not involve penetration . . . but which express a societal concern for such impositions because they provoke outrage, disgust or shame in the victim. The enhanced punishment for this offense when committed on a victim less than 16 years old by an offender 3 or more years older indicates an increased legislative concern for child victims.

*Weese*, 189 Mont. at 468, 616 P.2d at 373.  A proper reading of § 45-5-502, MCA,  together with § 45-2-101(66), MCA, clearly criminalizes Kern's impositions on J.S., the minor child. Consideration of the legislative intent behind the statute only strengthens that reading.  An adult male forcing a young girl to masturbate him until he ejaculates is undeniably the kind of conduct that is likely to provoke outrage, disgust or shame in the victim.

**B.  Does an affidavit to establish probable cause under § 45-5-502, MCA, require allegations that the defendant engaged in sexual contact to gratify his sexual response?**

¶25    In addition to his assertion that probable cause for a sexual assault charge requires allegations that the defendant touched the victim, Kern argues that probable cause could not be established absent a specific factual assertion that the defendant engaged in these acts to "arouse or gratify the sexual response or desire of either party."  Under a number of different rationales, this argument fails.

¶26    The language concerning intent to gratify quoted above comes from § 45-2-101(66), MCA, which defines a term--"sexual contact"--that is incorporated into § 45-5-502, MCA, the sexual assault statute under which Kern was charged.  To establish probable cause that Kern committed sexual assault, the affidavit need not specifically allege the purpose of the

sexual contact; this element is incorporated by reference to the statute Kern was accused of violating. *Steffes* (1994), 269 Mont. at 225, 887 P.2d at 1203.

¶27 Moreover, the State's affidavit in support of its motion to file an information presents a more than sufficient case for the establishment of probable cause. The factual allegations in the State's affidavit clearly suggest that the defendant, Kern, "knowingly subject[ed] another person to . . . sexual contact without consent" in violation of § 45-5-502, MCA. And, while the State was not required to present factual allegations demonstrating that Kern engaged in this prohibited sexual contact to "arouse or gratify the sexual response or desire of either party" to establish probable cause, the factual scenario presented makes a compelling case that the defendant did so for this very purpose. The affidavit repeatedly refers to the minor girl being forced to rub and touch Kern's penis, and the resultant emission of "white stuff" or "white gooey stuff." This defendant strains credibility when he argues that the State did not demonstrate probable cause that he acted to gratify his sexual response.

## ISSUE TWO

¶28 **Did the information charge facts sufficient to constitute the crime alleged absent allegations of touching by the defendant for the purpose of sexual gratification?**

¶29 Kern's second argument on appeal echoes the first: he contends that for an information charging sexual assault to be valid, it also must allege facts that the defendant

touched another for the purpose of arousing or gratifying the sexual desire of either party. This contention is without merit.

¶30 First, our rejection of this argument rests on the same analysis of the statute we offered above. Nothing in the language of the statute requires the State to allege that the defendant committed the touching himself. Likewise, the State need not allege that the defendant subjected J.S. to sexual contact for the purpose of gratifying his sexual response in order to satisfy the requirements of an information.

¶31 The State's third amended information satisfies the essential elements of an information. Long ago, this Court held that an information must contain "a statement of the facts constituting the offense charged in ordinary and concise language in such manner as to enable a person of common understanding to know what was intended." *State v. Paine* (1921), 61 Mont. 270, 273, 202 P. 205, 205. This Court recently reiterated that principle and added that "[a]n information is sufficient if it properly charges an offense in the language of the statute defining the offense charged." *State v. Hardaway*, 2001 MT 252, ¶ 67, 307 Mont. 139, ¶ 67, 36 P.3d 900, ¶ 67 (citation omitted).

¶32 Here, the State alleged the following facts constituting the offense of sexual assault:

> That the Defendant, RUSTY KERN, (d.o.b. 12-10-71), on or [sic] August of 1997 through May of 1999 did knowingly subject another person, J.S. (d.o.b. 5-10-90) to sexual contact without consent, and at a time when Defendant was three or more years older than J.S. who was under the age of fourteen; to wit: the defendant forced J.S. to touch and rub his penis . . . which is a violation of Section 45-5-502.

11

With the statement of facts provided in this information, a person of common understanding would be properly apprised of what was charged. Kern's ability to prepare his defense was in no way compromised. Further, the offense is charged in the language of the statute defining the charged offense, sexual assault.

¶33    Kern endeavors to convince this Court that the information failed to charge facts sufficient to constitute the crime of sexual assault because it did not allege that the purpose of his contact with the victim was to "arouse or gratify the sexual response or desire of either party." Section 45-2-101(66), MCA. However, as we explained above, this language is part of the definition of "sexual contact" and is incorporated by reference to the statute Kern violated.

¶34    As we held in *Steffes*, where the defendant unsuccessfully made a nearly identical argument, the information does not have to allege that the sexual contact was for the purpose of gratifying the sexual desire of either party because "sexual contact" is a legal term of art defined elsewhere in the code. *Steffes* (1994), 269 Mont. at 225, 887 P.2d at 1203 (relying on *Hamling v. United States* (1974), 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (upholding the sufficiency of a charging document where the definition of the offense is a legal term of art rather than a question of fact, and the legal term of art is sufficiently definite in legal meaning to give the defendants notice of the charge against them. The Court also noted that the charging document need not contain all the definitions of the legal terms of art used in the statute creating the crime)).

12

¶35 For the foregoing reasons, we affirm the District Court's conclusion that the information alleged facts sufficient to constitute the crime charged.

## ISSUE THREE

¶36 **Did the State follow statutory requirements in amending the information?**

¶37 The State filed its original information against Kern on November 30, 1999, charging the defendant with six offenses, including one count of felony sexual assault, three counts of felony assault, and two counts of misdemeanor child endangerment involving J.S.'s younger brother, D.S. Subsequently, the State amended the information three times. The factual allegations remained virtually the same throughout the amendment process. The specific charges, however, morphed repeatedly. In the third--and final--amended complaint, the State reduced the charges to a single count of felony sexual assault, involving J.S., and one count of misdemeanor child endangerment, relating to D.S.

¶38 Section 46-11-205, MCA, provides for the amendment of an information as follows:

> (1) The court may allow an information to be amended in matters of substance at any time, but not less than 5 days before trial, provided that a motion is filed in a timely manner, states the nature of the proposed amendment, and is accompanied by an affidavit stating facts that show the existence of probable cause to support the charge as amended. A copy of the proposed amended information must be included with the motion to amend the information.

> (2) If the court grants leave to amend the information, the defendant must be arraigned on the amended information without unreasonable delay and must be given a reasonable period of time to prepare for trial on the amended information.

> (3) The court may permit an information to be amended as to form at any time before a verdict or finding is issued if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced.

13

¶39    Kern argues that the State failed to comply with the requirements of § 46-11-205, MCA, each time it amended the information.  He claims that, despite repeated objections, the State never filed a motion in writing stating the nature of the proposed amendment. Rather, the State orally requested leave to file each amended information.

¶40    We agree that the State failed to adhere to all of the procedural requirements set forth in § 46-11-205, MCA.  However, for the reasons set forth below, we conclude that the State's inattention to detail does not, in this case, amount to reversible error.

¶41    In our analyses of issues implicating § 46-11-205, MCA, the dispositive question has been whether the amendment is one of substance or form.  When the amendment is one of substance, we have required stricter adherence to the procedural rules.  *City of Red Lodge v. Kennedy*, 2002 MT 89, ¶ 16, 390 Mont. 330, ¶ 16, 46 P.3d 602, ¶ 16.

¶42    To differentiate amendments of form versus those of substance "we examine whether an amendment to an information or complaint alters the nature of the offense, the essential elements of the crime, the proofs or the defenses."  *Red Lodge, ¶ 14.*   In this case, Kern originally faced four felony charges and two misdemeanor charges but ultimately stood trial only on a single felony charge and a single misdemeanor charge.  The nature of the offense did not change despite the repeated amendments, and the essential elements of the crime, the proofs required, and the defenses remained the same (or became less burdensome to the defendant).  Accordingly, we conclude that in this case, the amendments were amendments of form rather than of substance.

¶43 In *State v. Cameron* (1992), 253 Mont. 95, 830 P.2d 1284, where the amendment to the information was not substantial and the charges remained the same, we held that the district court's failure to arraign the defendant on the amended charges did not constitute reversible error. *Cameron*, 253 Mont. at 106, 830 P.2d at 1291. Here, although the motions to amend the information were presented orally rather than in writing, as required by statute, the defendant was made aware each time the State undertook to change the form of the information. As in *Cameron*, we do not believe the substantial rights of this defendant were prejudiced by the State's failure to fully comply with § 46-11-205, MCA. Accordingly, while we admonish the State to comply with all procedural requirements in the future, we find the State's shortcuts to be harmless error in this case.

### ISSUE FOUR

¶44 **Was Kern's last sentence of fifteen years in prison with eight years suspended correct?**

¶45 Kern objects to the final sentence imposed on him--fifteen years in the Montana State Prison--on multiple grounds. He challenges the duration of the sentence and the manner in which the District Court imposed it.

¶46 This Court reviews a criminal sentence only for legality (i.e., whether the sentence is within the parameters provided by statute). *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15. We review a trial court's interpretation of the law, including questions of statutory interpretation, *de novo*, to determine whether the court's interpretation is correct. *Montoya,* ¶ 16.

15

¶47    Montana law dictates that a defendant convicted of sexual assault against a minor "shall be punished by life imprisonment or by imprisonment in the state prison for a term of not less than 2 years or more than 100 years."  Section 45-5-502(3), MCA (1999).  The sentence imposed on Kern, imprisonment in the Montana State Prison for fifteen years, with all but seven years suspended, falls within the range established by statute.

¶48    Contrary to the District Court's findings, as articulated in the sentencing order, Kern contends that he is a non-violent offender.  As such, he argues he is entitled to special consideration in sentencing.

¶49    Section 46-18-101(3), MCA (1999), provides an extensive list of principles adopted by the state of Montana to achieve its sentencing policy goals:

> (e) Sentencing practices must include punishing violent and serious repeat felony offenders with incarceration.
> (f) Sentencing practices must provide alternatives to imprisonment for the punishment of those nonviolent felony offenders who do not have serious criminal records.

¶50    Section 48-18-104(2)(c), MCA (1999), provides a statutory definition for a "crime of violence":

> 'Crime of violence' means: (c) any sexual offense in which the offender causes bodily injury to the victim or uses threat, intimidation, or force against the victim.

¶51    The statutory definition of a "crime of violence" is clear.  "Where the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself." *State v. Renee*, 1999 MT 135, ¶ 19, 294 Mont. 527, ¶ 19, 983 P.2d 893, ¶ 19.  Thus, whether or not Kern's crime falls under the definition is a question of fact to be answered by the trial court.  We

16

review only for clear error. *Renee*, ¶ 19. While Kern claims there was no evidence he used threats or intimidation to carry out the sexual assaults against J.S., the record indicates otherwise. The victim testified that she kept the abuse a secret for two years because the defendant threatened to kill her mother if she revealed the sexual abuse. Further, it is difficult to imagine that a seven-year-old girl would comply with requests to masturbate an adult male absent some threat or intimidation. The District Court did not err in finding that Kern is a violent offender for sentencing purposes.

¶52    In addition, given Kern's prior conviction for negligent homicide, it is difficult for this Court to understand why Kern should be classified as an offender without a serious criminal record (§ 46-18-101(3)(f)). While drinking and driving ten years ago, the defendant had an accident in which his passenger and good friend was killed. While we applaud Kern's compliance with the terms of his sentence and probation, we cannot treat his criminal record--which involved the death of a human being--as a mark in Kern's favor, as his counsel implies we should.

¶53    Given the defendant's serious criminal record and his classification as a violent offender, the District Court did not have a responsibility to seek alternatives to imprisonment for Kern.

¶54    The defendant also presented evidence that the sentence he received was not commensurate with the sentences of others convicted of similar charges. We need not reach this issue, however, as a challenge to the "equitability" of a sentence falls under the authority of the Sentence Review Division. *Montoya,* ¶ 14.

¶55 Kern's final contention relates to the amendment of his original sentence. No one disputes that Kern's original sentence--a commitment to DOC for fifteen years, with all but seven years suspended violated Montana law. Section 46-18-201(3)(d)(i), MCA (1999), requires that a sentence to DOC include suspension of all but five years of the commitment. The dispute arises over whether the District Court acted appropriately in the manner in which it corrected the unlawful sentence.

¶56 The State argues that the District Court was well within the bounds of law when it corrected its mistake by ordering Kern committed to the *state prison* for fifteen years, with all but seven years suspended. The defendant argues, instead, that the original sentence of fifteen years to DOC was valid, and that it was merely the suspension of eight years, rather than ten, that violated Montana law. Thus, Kern argues, the proper way to correct the sentencing error is simply to retain the original sentence of a fifteen year commitment to DOC, but suspend all but five years of the sentence. The defendant is correct that such a sentence would comply with state law. That does not mean, however, that the course of action pursued by the District Court violated state law.

¶57 Montana law in effect when Kern committed his crime included the following provision for the correction of a sentence:

> The court may correct an erroneous sentence or disposition at any time and may correct a sentence imposed in an illegal manner within 120 days after the sentence is imposed.

Section 46-18-117, MCA (1999). Based on this provision, we see nothing restricting the District Court from pursuing either the option recommended by the State, or that proffered

18

by the defendant, to correct its original sentence. That Kern would have clearly preferred commitment to DOC for fifteen years, with all but five years suspended, does not entitle him to that more lenient sentence. The District Court did not err in timely correcting the sentence, pursuant to § 46-18-117, MCA.

## CONCLUSION

¶58     For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ JAMES C. NELSON
/S/ JIM REGNIER