Nos. 02-403, 02-405

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 58

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

BARRY ALONZO HEATH,

        Defendant  and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                       In and For the County of Cascade, Cause Nos. ADC-01-068, BDC-01-170
                       Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Chad Wright, Appellate Defender, Helena, Montana,

        For Respondent:

                Honorable Mike McGrath, Attorney General; John Paulson,
                Assistant Attorney General, Helena, Montana

                Brant Light, Cascade County Attorney; John Parker, Marvin
                Anderson, Deputy County Attorneys, Great Falls, Montana

                          Submitted on Briefs:  August 7, 2003

                                 Decided:  March 10, 2004

Filed:

           _____
                           Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      Barry Alonzo Heath appeals from the judgment and sentence entered by the Eighth Judicial District Court, Cascade County, on a jury verdict convicting him of the felony offenses of sexual intercourse without consent and witness tampering. We affirm in part, reverse in part and remand for resentencing.

¶2      Heath raises the following issues on appeal:

¶3      1.      Did the District Court abuse its discretion in denying Heath's challenges to two prospective jurors for cause?

¶4      2.      Did the District Court err in sentencing Heath on the conviction for sexual intercourse without consent?

## BACKGROUND

¶5      The State of Montana charged Heath by information with committing the felony offense of sexual intercourse without consent and, in a later information ultimately consolidated with the first, with committing the felony offense of witness tampering. It alleged Heath raped his housemate, a woman with whom he had once been romantically involved, and wrote the woman letters from jail while the first charge was pending. The District Court scheduled a jury trial.

¶6      During voir dire, the District Court denied Heath's challenges for cause regarding two prospective jurors, and Heath used two of his six peremptory challenges to remove them. The case proceeded to trial and the jury convicted Heath of both charges. The District Court entered judgment and sentenced Heath. Heath appeals.

**STANDARDS OF REVIEW**

¶7 In reviewing a trial court's denial of a challenge for cause, we determine whether the trial court abused its discretion. *State v. Falls Down*, 2003 MT 300, ¶ 17, 318 Mont. 219, ¶ 17, 79 P.3d 797, ¶ 17 (citation omitted). In the context of challenges for cause, a court abuses its discretion if it fails to excuse a prospective juror whose actual bias is discovered during voir dire. *State v. Freshment*, 2002 MT 61, ¶ 12, 309 Mont. 154, ¶ 12, 43 P.3d 968, ¶ 12 (citations omitted). Structural error requiring automatic reversal occurs when a district court abuses its discretion in denying a defendant's challenge for cause, the defendant uses a peremptory challenge to remove the disputed prospective juror, and the defendant exhausts all peremptory challenges. *Freshment*, ¶ 14 (citation omitted).

¶8 We review a criminal sentence for legality only; that is, whether the sentence is within statutory parameters. A trial court's statutory interpretation is a question of law, which we review to determine whether it is correct. *State v. Kern*, 2003 MT 77, ¶ 46, 315 Mont. 22, ¶ 46, 67 P.3d 272, ¶ 46 (citations omitted).

**DISCUSSION**

¶9 **1.    Did the District Court abuse its discretion in denying Heath's challenges to two prospective jurors for cause?**

¶10 The bases for challenging potential jurors for cause in Montana are set forth in § 46-16-115(2), MCA. One specified basis is that a juror has "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-

115(2)(j), MCA. If voir dire examination raises a serious question about a prospective juror's ability to be fair and impartial, dismissal for cause is favored. *Freshment*, ¶ 11 (citation omitted).

¶11 In a case concerning the right of the press and public to attend individual voir dire examinations, we stated generally:

> It is only where [prospective jurors] form fixed opinions on the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict based solely on the evidence presented in court that they become disqualified as jurors.

*Great Falls Tribune v. District Court* (1980), 186 Mont. 433, 439-40, 608 P.2d 116, 120 (citations omitted). While *Great Falls Tribune* did not directly address challenges for cause, we have repeated this rule in numerous subsequent cases involving challenges for cause without clarifying how it meshes with the "state of mind" basis for challenges for cause set forth in § 46-16-115(2)(j), MCA.

¶12 In *State v. DeVore*, 1998 MT 340, ¶¶ 14, 21, 292 Mont. 325, ¶¶ 14, 21, 972 P.2d 816, ¶¶ 14, 21, *overruled on other grounds*, *State v. Good*, 2002 MT 59, ¶ 63, 309 Mont. 113, ¶ 63, 43 P.3d 948, ¶ 63, we set forth both the statutory "state of mind" rule and the "fixed opinion" rule. With regard to the latter, we rejected the State's argument that our review of rulings on challenges for cause "is limited only to whether the juror has stated a specific belief that the defendant is guilty as charged." *DeVore*, ¶ 22. We concluded the prospective jurors at issue demonstrated "another form of bias" by stating beliefs that people charged with criminal offenses must be "guilty of something" and by having difficulty understanding

4

and applying the presumption of innocence. *DeVore*, ¶ 24. We did not expressly state that the prospective jurors' bias met the statutory "state of mind" criterion, but that was clearly the essence of our conclusion.

¶13 In *Good*, ¶ 42, we applied only § 46-16-115(2)(j), MCA, which–as set forth above–focuses on whether prospective jurors have a "state of mind" which would prevent them from acting with entire impartiality and without prejudice to either party's substantial rights. We concluded the prospective jurors at issue did not state "an unequivocal opinion that [the defendant] was guilty as charged," but did express "a form of bias based on their belief that a young sexual abuse victim would not lie." *Good*, ¶ 53. We ultimately held that the denials of the challenges for cause required automatic reversal. *Good*, ¶ 66.

¶14 In *Freshment*, we quoted the statutory "state of mind" basis for a challenge for cause and also reiterated the "fixed opinion" rule. *Freshment*, ¶¶ 11-12 (citations omitted). We did not apply the "fixed opinion" rule, however. Instead, we determined that prospective jurors "stated an actual bias directly related to an issue critical to the outcome of the case"–namely, whether the defendant could have a reasonable belief that an alleged victim of sexual intercourse without consent was 16 or older–and reversed. *Freshment*, ¶¶ 16, 19.

¶15 In *Falls Down*, we set forth both the statutory "state of mind" rule and the "fixed opinion" rule in the course of affirming a district court's denial of four challenges for cause. *Falls Down*, ¶ 22-23. There, three prospective jurors expressed initial opinions of guilt based on what they had seen in the media, and one juror indicated he was not certain how he would feel if the defendant did not take the stand. *Falls Down*, ¶¶ 25-26, 28, 31, 33.

After brief questioning by the trial court and counsel, the prospective jurors stated some variant of their ability to base their decision on the evidence, apply the presumption of innocence, and set aside any personal opinions. *Falls Down*, ¶¶ 25, 28, 31, 33. As to each juror, we concluded no fixed opinion had been established. *Falls Down*, ¶¶ 27, 30, 32, 35. We ultimately determined the prospective jurors demonstrated they could be fair and impartial. *Falls Down*, ¶ 36.

¶16 From this abbreviated review of our recent decisions addressing challenges for cause, it appears that the "fixed opinion of guilt" rule is oft-repeated but seldom applied, and clarification is necessary. As we observed in *DeVore*, our prior cases addressing juror impartiality did not necessarily involve jurors who had stated a fixed opinion regarding the defendant's guilt; rather, "circumstantial evidence of bias was apparent in relation to the particular circumstances of the defendant's case." *DeVore*, ¶ 23 (citations omitted). Therefore, we conclude that the "fixed opinion of guilt" rule is but one argument which can be asserted under the statutory "state of mind" basis for a challenge for cause. We further conclude that challenges for cause asserted under § 46-16-115(2)(j), MCA, must be determined pursuant to both the statutory language and the totality of the circumstances presented. With that clarification in mind, we turn to the District Court's denial of Heath's two challenges for cause.

**Prospective Juror Carmen Caldwell**

6

¶17     Prospective juror Carmen Caldwell stated she had volunteered as a rape survivor advocate in college and her ex-boyfriend had stalked her. Heath argues that direct and circumstantial evidence reveals Caldwell was biased.

¶18     Heath first contends that Caldwell's statements constituted direct evidence of her bias. He correctly, but selectively, quotes portions of Caldwell's exchanges with counsel. We review the totality of her responses to determine whether they raised a serious question that she could not be fair and impartial. *See Freshment*, ¶ 11.

¶19     Prosecutor John Parker asked if any panelists could not agree to afford Heath the presumption of innocence, and no panelist responded. He asked Caldwell what type of information she would examine to make an important decision, and she stated she would "look at the facts first." Later, Parker asked the panelists whether they or their friends had been crime victims, and Caldwell responded:

> Caldwell:     Yes. I've known someone. And I myself have been a victim, and I wouldn't have a problem with that. It wouldn't affect my judgment.
> Parker:       You're willing and able to set it aside, in other words?
> Caldwell:     Right.

Parker then inquired about what evidence Caldwell would expect in a sexual intercourse without consent trial, and she stated, "[w]ell, hopefully you've gotten enough physical evidence with the rape kit and things like that. But you would also look at the credibility of the witnesses involved." Parker ended his initial questioning by asking the panelists if they would commit to giving a fair trial, and no one indicated he or she would not.

7

¶20 Defense counsel Steven Hudspeth followed up on Caldwell's statement that she had been a crime victim:

> Hudspeth: I just need to know if–for example, Miss Caldwell, was that a property crime?
> Caldwell: Yes.
> Hudspeth: Okay. So that isn't going to make a difference on this case?
> Caldwell: No.

¶21 Hudspeth then asked if any prospective juror had worked in a program similar to a victim witness assistance program, and Caldwell responded that she had volunteered as a rape survivor advocate in college and described her functions as a volunteer. Heath highlights the following subsequent exchange:

> Hudspeth: Do you think you should be on this case as a potential juror? I mean, let me phrase it a different way. I'm not trying to confuse you. But if you were the one charged with what he's charged with sitting there, and the objective is to get 12 people that have no biases one way or the other, would you want somebody with your prior experience sitting in potential judgment of you on this particular type charge?
> Caldwell: I feel that I could be–I could put my prejudices aside. But if I were in that situation, I probably wouldn't want somebody on the jury that had my experience.
> Hudspeth: So how do you reconcile the two that you could put–you personally can put your prejudices aside–not saying you have any–but you would feel uncomfortable if you had somebody, you could see–
> Caldwell: I can see his point.
> Hudspeth: You and I have a meeting of the minds why I'm asking these questions?
> Caldwell: I do. I would think you would make that decision.

¶22 Hudspeth's voir dire continued:

| | |
|---|---|
| Hudspeth: | I don't get to make that decision. [The judge] gets to make the decision. So you can help me out or not if you want. Anything else that the court should know? |
| Caldwell: | I should probably also clarify the property crime that we discussed was a stalking incident that became a property crime. So that might be helpful in your– |
| Hudspeth: | Somebody was stalking you? |
| Caldwell: | Correct. |

Heath points to later statements during the same colloquy:

| | |
|---|---|
| Hudspeth: | And there may be some testimony come up in this case that something like that may or may not have gone on in the same situation. Do you feel that you should be on this particular case? I'm not saying you're a bad person, you're a bad juror. You can see why I'm– |
| Caldwell: | I do. |
| Hudspeth: | Only you can make that decision as to whether you feel you can be fair and impartial to my client. |
| Caldwell: | I feel I probably shouldn't be on this particular case. |
| Hudspeth: | Why is that? |
| Caldwell: | Just because of the previous experience that I've had and also the experience with rape survivors. |

¶23    At this point, Hudspeth challenged Caldwell for cause, and the State asked follow-up questions:

| | |
|---|---|
| Parker: | . . . Miss Caldwell, in your experience do you find that many people know someone who has been the victim of a sexual offense? |
| Caldwell: | Yes. |
| . . . . | |
| Parker: | But just because one of us may know people that have been victimized, that doesn't mean that Mr. Heath is guilty, does it? |
| Caldwell: | No. |
| Parker: | Does that mean he doesn't have a right to a fair trial? |
| Caldwell: | Not at all. He has a right to that trial. |
| Parker: | Suppose that you were–and I think I've asked you this already, but I'll ask you again. Suppose that you were charged with a |

9

crime. Would you want to be entitled to have a trial of your own?

Caldwell: Yes.

Parker: Would you want the State of Montana to be required to prove that offense beyond a reasonable doubt?

Caldwell: Yes.

Parker: Don't you agree that Mr. Heath deserves that right?

Caldwell: Yes, I do.

Parker: Because he is innocent until proven guilty?

Caldwell: Yes.

¶24 Hudspeth then continued his questioning:

Hudspeth: Isn't part of my client's right to a fair trial a fair and impartial jury?

Caldwell: Yes.

Hudspeth: And I take it you're of the opinion that it's probably better if somebody else was sitting in your place being on the jury that might not have the same life experiences and may have a chance to be more fair and impartial because they don't have your background and experience?

Caldwell: Possibly.

. . . .

Hudspeth: As far as you know, [other prospective jurors] might have backgrounds and experiences that don't include the [advocacy work] you did at the university and somebody stalking you; isn't that right?

Caldwell: Correct.

Hudspeth: That's why you feel you agree with me that maybe you're not the best juror for this particular case because of the charges and because of who you are; is that right?

Caldwell: Yes.

Hudspeth: Even though you want to be fair and impartial, you've volunteered to me and to this court that there is a possibility, maybe even a likelihood, that it's difficult to get those things out of your head, so to speak; is that right?

Caldwell: I think those life experiences stay with you even when you try and set things aside.

Hudspeth: Very difficult then, wouldn't it be? And we can't predict if you're on this jury what you're going to be thinking about during this trial or if you go into the jury room to deliberate

what you might be thinking about as opposed to just the facts of this case; isn't that right?

Caldwell: Well, I would just look at the facts of the case. But I also would like you to be aware of my previous experience.

At this point, Hudspeth renewed the challenge for cause. The District Court briefly questioned Caldwell, as set forth below, and ultimately denied the challenge.

¶25 We recently held a district court did not abuse its discretion when it denied four challenges for cause, in part because "only after . . . manipulation of the potential jurors' initial responses did their responses become unclear and seemingly biased." *Falls Down*, ¶¶ 20-21. Such is the case here. Caldwell initially stated she would "look at the facts," her familiarity with crime victims and experience as a crime victim "wouldn't affect [her] judgment," and she could set aside her experiences. In response to Hudspeth's questions, Caldwell characterized the crime to which she referred as a property crime and affirmed that her experience would not make a difference in Heath's trial. She expressed reservations about sitting on the jury only after Hudspeth asked Caldwell to place herself in Heath's position, informed her that her stalking experience could be similar to Heath's case, and told her that she could "help [him] out or not." She agreed that another juror "possibly" could be "more fair and impartial," that if she were Heath she might not want herself as a juror, and that "maybe" she was not the "best juror" for this case. At no time did she state she was unwilling or unable to consider the case objectively and fairly. Heath also fails to cite any authority for his implicit argument that a prospective juror's statement that a defendant might

11

not want her or him on the jury constitutes actual bias or an inappropriate state of mind under § 46-16-115(2)(j), MCA.

¶26    Relying on *Freshment*, Heath also argues the prosecution improperly rehabilitated Caldwell with follow-up questions. "Coaxed recantations in which jurors state they will merely follow the law, whether prompted by the trial court, the prosecution, or the defense, do not cure or erase a clearly stated bias which demonstrates actual prejudice against the substantial rights of a party." *Freshment*, ¶ 18. We have frequently observed that most people will agree to follow the law in the face of repeated questioning in a courtroom, and we have advised judges and lawyers to refrain from engaging in such repeated questioning. *See, e.g.*, *Freshment*, ¶ 17; *Good*, ¶ 54. In determining whether improper rehabilitation has occurred, we focus on whether a juror's "spontaneous, and thus most reliable and honest, responses" raised a serious question about his or her ability to be fair and impartial. *See, e.g.*, *DeVore*, ¶ 28; *Good*, ¶¶ 54-55.

¶27    As discussed above, Caldwell's initial and spontaneous statements did not raise a serious question of bias; in addition, any arguable bias appeared only after defense counsel manipulated Caldwell's statements. Moreover, Caldwell's responses to the prosecutor's follow-up questions simply revealed her familiarity with sex crime victims was not unique and affirmed her belief in the core principles necessary to an impartial jury and a fair trial. We conclude the State's follow-up questions did not constitute improper rehabilitation.

¶28    Heath also contends the District Court "took over" the alleged rehabilitation, advancing *DeVore* and *Good* as authority. In *DeVore*, we concluded a district court "shifted

the focus" from prospective jurors' expressed inability to presume innocence, and coaxed recantations by asking whether they could follow the law and court instructions. *DeVore*, ¶¶ 20, 27-28. In *Good*, we determined a district court improperly rehabilitated a prospective juror by asking whether she "quarrel[ed] with [his] little civics speech," after she consistently stated she would have trouble believing a teenager lied about sexual abuse. *Good*, ¶¶ 48, 55.

¶29 Again, Caldwell's statements did not appear biased until defense counsel manipulated them. Moreover, the court focused on discerning whether Caldwell's responses to Hudspeth were from her own perspective or Heath's:

> The Court: Miss Caldwell, when you answer the questions, are you answering them from Mr. Hudspeth's position or from your position as a prospective juror? In other words, are you agreeing with him that if you were Mr. Hudspeth, you would probably like to have someone else?
>
> Caldwell: Correct. I do not feel I would be prejudiced in this particular case. But I can understand his reasoning for wanting somebody else that doesn't have those experiences on the jury.
>
> . . . .
>
> The Court: What do you mean by that? Do you mean that because of your rape counseling experience that you're automatically prejudiced?
>
> Caldwell: No. But I would assume that–I have worked mostly with survivors and victims of rape. So I would feel he would probably not want me on this particular jury.
>
> . . . .
>
> The Court: Can you put aside everything that you know, that you have learned from your education and from your volunteer work, can you put that aside and base your judgment solely on the testimony and evidence presented in this courtroom?
>
> Caldwell: Yes.
>
> The Court: And follow the law as given to you by the court?
>
> Caldwell: Yes.

This questioning was not an attempt by the District Court to shift the focus from Caldwell's beliefs or to cause her to recant her initial statements. The District Court merely attempted to clarify–after Hudspeth's questions–whether Caldwell was actually biased or simply agreeing that Heath may have preferred not to have her on the jury. *Cf. Good*, ¶ 48, *DeVore*, ¶ 20. We conclude the District Court did not improperly rehabilitate Caldwell.

¶30 Heath next argues that circumstantial evidence–Caldwell's experiences as a rape survivor advocate and stalking victim–"supported" or "confirmed" her alleged statements of bias. He relies on the following language from *United States v. Allsup* (9th Cir. 1977), 566 F.2d 68, 71, which this Court quoted in *State v. Chastain* (1997), 285 Mont. 61, 64, 947 P.2d 57, 59-60, *overruled on other grounds by State v. Herrman*, 2003 MT 149, ¶ 33, 316 Mont. 198, ¶ 33, 70 P.3d 738, ¶ 33:

> Bias can be revealed by a juror's express admission of that fact, but, more frequently, jurors are reluctant to admit actual bias, and the reality of their biased attitudes must be revealed by circumstantial evidence. We agree with the observation in *Kiernan v. Van Schaik* (3d Cir. 1965), 347 F.2d 775, 781: "That men will be prone to favor that side of a cause with which they identify themselves either economically, socially, or emotionally is a fundamental fact of human character."

¶31 Heath argues the District Court should have dismissed Caldwell because she "would have developed substantial emotional involvement" in her advocacy work and "it would only be natural" for her to identify with an alleged rape victim. On the record before us, these arguments are purely speculative. Moreover, Caldwell's observation that "life experiences stay with you" is true of every prospective juror. We conclude Heath's unsupported

14

speculation about Caldwell's emotional involvement falls far short of establishing bias via circumstantial evidence.

¶32 Noting Caldwell's reference to a rape kit, Heath contends Caldwell was biased because her past experience gave her "more specific knowledge about rape cases than the average juror." In derogation of the requirement of Rule 23(a)(4), M.R.App.P., Heath offers no authority in support of his argument that superior knowledge about the subject matter of a case renders a potential juror biased. Absent such authority, we will not consider the issue. *See, e.g., State v. Strauss*, 2003 MT 195, ¶ 51, 317 Mont. 1, ¶ 51, 74 P.3d 1052, ¶ 51.

¶33 Finally, Heath contends Caldwell should have been dismissed because her stalking experience resembled the allegations in Heath's case, in that Caldwell's ex-boyfriend committed a felony after their relationship ended. Heath correctly observes that two other prospective jurors were dismissed for cause after *in camera* questioning revealed one prospective juror and his girlfriend had been kidnaped by men who subsequently raped the girlfriend, and another prospective juror had been sexually assaulted. He argues "[b]eing a crime victim was reason enough to dismiss" these jurors, so Caldwell should have been dismissed as well. We disagree.

¶34 Both dismissed jurors were emotionally distressed and stated they could have difficulty weighing the evidence objectively. Unlike the dismissed jurors, Caldwell did not state she would have any such difficulty. Indeed, she repeatedly stated that she would focus solely on the facts of the case and set her prior experiences aside. Moreover, both dismissed jurors were involved in sex offenses similar to the charge Heath faced, and Caldwell's

15

stalking experience was a property offense.  We conclude Caldwell's stalking experience did not constitute circumstantial evidence establishing she could not act with impartiality and without prejudice to Heath's substantial rights.  *See* § 46-18-115(2)(j), MCA.

¶35   To summarize, we conclude that direct evidence, in the form of Caldwell's statements, did not raise a serious question about her ability to be fair and impartial, and neither the prosecutor nor the District Court improperly rehabilitated her.  We also conclude that the circumstantial evidence–Caldwell's stalking incident and rape advocacy experience–did not establish that she had an improper state of mind or that she was biased.

¶36   We hold the District Court did not abuse its discretion in failing to dismiss Caldwell for cause.

**Prospective Juror Mary Rice**

¶37   Heath contends the District Court abused its discretion in failing to dismiss prospective juror Mary Rice for cause because circumstantial evidence established her bias. Rice was a former juvenile detention center employee who held a bachelor's degree in psychology and had completed 56 hours of continuing education on sex offenses.  She stated she did not plan to counsel rape victims, but wished to work "for the predator side, like a court evaluation or corrections evaluations."  The following exchange occurred:

> Hudspeth:   It's fair for me to say that you have probably got more experience than the average layperson when it comes to alleged sex crimes, is that right?
> Rice:   I would say so, yes.
> Hudspeth:   And is that–that's probably going to have an impact in this case, wouldn't it?

16

| | |
|---|---|
| Rice: | I have the knowledge, but I can certainly stay biased [sic], and I wouldn't be prejudiced. |
| Hudspeth: | Okay. How can you say that? I'm not trying to sound prejudiced, but I have to ask the question. |
| Rice: | That's a fair question. Just because I–even in the training and even in the education I've seen, there is always both sides to each story. And there has been false accusations. There has been true accusations. I mean, until you see the evidence and hear the circumstances, you can't make that judgment. |
| Hudspeth: | Fair enough. Thank you. |

Hudspeth then questioned other prospective jurors, including Caldwell. Later, Hudspeth asked Rice if she felt she could be fair and impartial after listening to Caldwell's statements. Rice responded, "I do." Hudspeth challenged Rice for cause, basing his challenge on her education and plans to work as a sex offender evaluator. The District Court denied the challenge.

¶38 Heath argues that Rice's training predisposed her to finding him guilty, and she could have become a non-testifying expert in jury deliberations. Nothing of record supports Heath's speculation. In addition, as discussed above, Heath offers no authority for the proposition that superior knowledge about the subject matter of a case renders a potential juror biased. Therefore, we decline to address this argument. *See Strauss*, ¶ 51.

¶39 Heath further argues that Rice's use of the term "predator" indicated she was more likely to believe an alleged victim than a defendant. Hudspeth did not base his challenge on this statement, but on Rice's education and plans to work with sex offenders. A party may not raise new arguments or change his legal theory on appeal. *See State v. Martinez*, 2003

17

MT 65, ¶¶ 17-18, 314 Mont. 434, ¶¶ 17-18, 67 P.3d 207, ¶¶ 17-18 (citation omitted). Therefore, we decline to address this argument.

¶40 Finally, Heath advances *United States v. Armstrong* (C.A.A.F. 2000), 54 M.J. 51, as an analogous case. There, the Court of Appeals for the Armed Forces affirmed a ruling that a military judge erred in failing to dismiss a court-martial panelist for cause, when the panelist worked in the same law enforcement office as the investigating agent and heard "disparaging comments" about the defendant. *Armstrong*, 54 M.J. at 52, 55. The panelist stated he could disregard the comments and be impartial, but the *Armstrong* court affirmed the ruling that the panelist's disclaimer did not dispel the implied bias which arose from the panelist's working relationship with the investigator. *Armstrong*, 54 M.J. at 53, 55.

¶41 Unlike the *Armstrong* panelist's working relationship with an investigator directly involved in the defendant's case, Rice's education and wish to become a sex offender evaluator had no relationship whatsoever to Heath or his case. Moreover, Rice did not simply state she would disregard her past experiences and follow the law; she stated that she was aware of both true and false accusations and would need to weigh the evidence before making a judgment. We conclude Rice's training and experience did not establish a state of mind which would prevent her from acting with entire impartiality and without prejudice to Heath's substantial rights. *See* § 46-16-115(2)(j), MCA.

¶42 We hold the District Court did not abuse its discretion in failing to dismiss Rice for cause.

18

¶43 **2. Did the District Court err in sentencing Heath on the conviction for sexual intercourse without consent?**

¶44 Sexual intercourse without consent is generally punishable by life imprisonment or imprisonment for 2 to 100 years, and a fine up to $50,000. Section 45-5-503(2), MCA (1999). A sentencing court has numerous options, including imprisonment at the Montana State Prison (MSP) and commitment to the Department of Corrections (DOC) with all but five years suspended. Sections 46-18-201(3)(c) - (d), MCA (1999).

¶45 Before trial, Heath had executed a plea agreement, under which the sentence recommended by the State would be a 10-year DOC commitment, with 7 years suspended. A pre-sentence investigation report (PSI) performed at that time supported this recommendation. Heath pled guilty but later withdrew his plea, and no new PSI was prepared after his trial and conviction. At sentencing, the District Court asked about the earlier plea agreement terms and repeatedly stated it was not sure it would have accepted the recommendation. Defense counsel argued that nothing justified an increase over the plea agreement recommendation. The State recommended a 40-year sentence at the MSP, with no time suspended, for the sexual intercourse without consent charge.

¶46 The District Court committed Heath to the DOC for 25 years, with 5 years suspended, for sexual intercourse without consent. The reasons for the sentence were "the Defendant's prior criminal history, the nature of the offense, and the Defendant's lack of remorse," as well as "the protection of society." As conditions of his sentence, Heath was required to

complete phase 1 of the sex offender program and a criminal thinking course at the MSP.

¶47 Heath argues, and the State concedes, that the District Court erred in failing to suspend all but the first five years of Heath's DOC commitment. The parties also agree that Heath's failure to object to the sentence contemporaneously is not a bar to raising the issue on appeal, because we review any allegedly illegal sentence timely presented on appeal. *See State v. Brister*, 2002 MT 13, ¶ 16, 308 Mont. 154, ¶ 16, 41 P.3d 314, ¶ 16 (citation omitted).

¶48 The parties diverge on the question of how the illegal sentence should be remedied. Heath argues the illegal portion of his sentence should be stricken, so his DOC commitment would be 25 years, with all but 5 years suspended. In support, he correctly cites to cases in which we vacated illegal portions of sentences or remanded with instructions to strike the illegal portions. *See, e.g.*, *State v. Parker*, 2002 MT 162, ¶ 14, 310 Mont. 418, ¶ 14, 51 P.3d 484, ¶ 14; *State v. Shockley*, 2001 MT 180, ¶ 11, 306 Mont. 196, ¶ 11, 31 P.3d 350, ¶ 11; *State v. Aguilar*, 1999 MT 159, ¶ 10, 295 Mont. 133, ¶ 10, 983 P.2d 345, ¶ 10. The State, on the other hand, urges us to remand for resentencing, relying on *Kern*, ¶¶ 55-57, a case in which we affirmed a district court's correction of an illegal DOC commitment. In other cases, we have remanded for resentencing after determining a portion of a sentence was illegal. *See State v. Williams*, 2003 MT 136, ¶ 15, 316 Mont. 140, ¶ 15, 69 P.3d 222, ¶ 15; *Brister*, ¶ 28.

¶49 This Court has not adopted clear-cut rules concerning the appropriate remedy for a partially illegal sentence. In general, we have vacated or remanded with instructions to

strike when the illegal portion of a sentence was a condition of a suspended sentence or a sentence enhancement. *See, e.g.*, *Shockley*, ¶ 11. We generally have remanded for resentencing when the illegal portion "affect[ed] the entire sentence" or when we were unable to discern what sentence the trial court would have imposed had it correctly applied the law. *See, e.g.*, *Williams*, ¶ 15; *Brister*, ¶ 28. Having set forth these two relatively distinct categories of cases involving partially illegal sentences, we conclude it is not practicable to articulate a "one size fits all" rule. Therefore, we examine the sentence and record to determine the appropriate remedy.

¶50 The District Court followed neither the State's recommendation for a 40-year MSP sentence, with no time suspended, nor defense counsel's recommendation for a 10-year DOC commitment, with 7 years suspended. Instead, it committed Heath to the DOC for 25 years, with 5 years suspended. As set forth above, § 46-18-203(d), MCA (1999), requires that all but 5 years of the commitment be suspended. Striking the illegal portion would result in a commitment to the DOC of 25 years, with 20 suspended, rather than the 25-year commitment, with 5 suspended, that the sentencing court imposed.

¶51 In addition to the lengthy–but illegal–commitment to the DOC, the District Court required Heath to complete a sex offender program and criminal thinking course at the MSP. The court stated the reasons for the sentence as Heath's prior criminal history, his lack of remorse, the nature of the offense, and the protection of society. On this record, we conclude the illegal unsuspended portion of Heath's sentence "affects the entire sentence," and we

21

cannot discern what the District Court would have done if it had properly applied the law. *See Williams*, ¶ 15; *Brister*, ¶ 28.

¶52　Heath asserts, however, that resentencing "could impermissibly expose [him] to an increased sentence." He relies on *North Carolina v. Pearce* (1969), 395 U.S. 711, 725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656, 669, for the proposition that "[d]ue process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." Although the present case does not involve a retrial, there can be no dispute that the District Court, on remand for resentencing, cannot allow vindictiveness to play a part in imposing a new sentence on Heath. However, the *Pearce* presumption against vindictiveness was "not designed to prevent the imposition of an increased sentence on retrial for some valid reason associated with the need for flexibility and discretion in the sentencing process." *State v. Hubbel*, 2001 MT 31, ¶ 27, 304 Mont. 184, ¶ 27, 20 P.3d 111, ¶ 27 (citation omitted).

¶53　We hold the District Court erred in committing Heath to the DOC for 25 years, with 5 years suspended, and we remand for resentencing.

¶54　Affirmed in part, reversed in part and remanded.

/S/ KARLA M. GRAY

We concur:

/S/ JOHN WARNER
/S/ PATRICIA O. COTTER

22

/S/ JIM REGNIER
/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶55    I dissent as to juror Caldwell. During the course of voir dire, Caldwell stated that she was the victim of a stalking incident which resulted in a property crime. She had also volunteered as a rape survivor advocate and stated, on two different occasions during voir dire that, if she were in the shoes of the defendant in a rape (sexual intercourse without consent) case, she "probably wouldn't want somebody on the jury that had my experience." These straightforward statements from a prospective juror are sufficient to raise a serious question about her ability to be fair and impartial. *State v. DeVore*, 1998 MT 340, ¶ 24, 292 Mont. 325, ¶ 24, 972 P.2d 816, ¶ 24 (belief that defendant was guilty of something demonstrated a serious question about ability to be impartial and honor the presumption of innocence).

¶56    Section 46-16-115(2)(j), MCA, provides that a prospective juror can be challenged if it is apparent that the juror has "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Obviously, no one is in a better position than Caldwell herself to explain her "state of mind." When Caldwell, a victim of a sex-related crime and a rape survivor volunteer, states that "I feel I probably shouldn't be on this particular case," neither the trial court nor this Court should be second guessing her truthful acknowledgment that another juror could be "more fair and impartial." Fairness does not

24

come in degrees.  Either a juror feels she can be fair and impartial or not.  The defendant has a constitutional right to a fair and impartial jury, and he should not have to exercise a peremptory challenge to excuse someone with Caldwell's admittedly skeptical state of mind.


/S/ W. WILLIAM LEAPHART


Justice James C. Nelson dissenting.

I concur in the dissent of Justice Leaphart.


/S/ JAMES C. NELSON