No. 02-279

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 300

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

MYRON FALLS DOWN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DC 2001-110
The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    William Hooks, Attorney at Law, Helena, Montana

    For Respondent:

    Honorable Mike McGrath, Montana Attorney General, C. Mark Fowler,
    Assistant Montana Attorney General, Helena, Montana; Dennis Paxinos,
    Yellowstone County Attorney, Billings, Montana

                Submitted on Briefs:  June 26, 2003

                         Decided:   November 10, 2003

Filed:

—————————————————————
                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

## INTRODUCTION

¶1    Myron Falls Down (Falls Down) appeals the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, on a jury verdict finding him guilty of deliberate homicide, attempted deliberate homicide, aggravated kidnaping, two counts of sexual intercourse without consent, and one count of sexual intercourse without consent by accountability.

¶2    We affirm the District Court.

¶3    We address and restate the following issues on appeal:

¶4    1.    Did the District Court err in denying four of Falls Down's challenges for cause?

¶5    2.    Did the District Court err in denying Falls Down's objection to the State's peremptory challenge?

¶6    3.    Did the District Court err in denying Falls Down's motion for a mistrial or for additional individual voir dire when the State asked the jury about their knowledge regarding post traumatic stress disorder?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7    Falls Down was convicted by a jury of deliberate homicide, attempted deliberate homicide, aggravated kidnaping, two counts of sexual intercourse without consent, and one count of sexual intercourse without consent by accountability.

¶8    Before his jury trial, individual voir dire was conducted. During individual voir dire, the potential jurors were asked to complete a questionnaire. The District Court, the State of Montana (State), and Falls Down then questioned the potential jurors who either had

2

personal knowledge of the case, had heard about the case, or had answered affirmatively to any of the questions on the questionnaire.

¶9 During this questioning, Falls Down challenged for cause four potential jurors. These four jurors included: A.C., J.B., D.R., and M.S. Additional facts regarding their statements will be discussed as they become applicable in the following analysis.

¶10 The District Court denied three of Falls Down's challenges for cause without explanation. As to the fourth challenge for cause, the District Court denied the challenge, stating generally that the law simply requires that an attorney obtain a commitment from a potential juror that the juror can set aside any personal biases.

¶11 After conducting individual voir dire, the State and Falls Down then conducted general voir dire on the 48 potential jurors chosen from the individual voir dire process.

¶12 During this general voir dire, both the State and Falls Down exercised their first six peremptory challenges on the first 24 potential jurors questioned. In so doing, the State removed R.M., the only juror of a different ethnic background. Falls Down removed the four jurors, whom he was unsuccessful in challenging for cause, thereby using four of his six peremptory challenges.

¶13 Falls Down objected to the State's peremptory challenge, citing "Battin" in support of his argument that such a challenge needed an explanation. The State countered by explaining it removed R.M. because it felt she would not be fair and impartial given that her son had been charged with an assault case and her husband had been involved in an assault case. The District Court then denied Falls Down's objection, without finding that purposeful

3

discrimination had not occurred in removing R.M. from the jury.

¶14   Also during general voir dire, the State asked the jurors if any of them knew about or had experience with post traumatic stress disorder (PTSD).  In response to this question, two jurors stated that they had first-hand knowledge regarding the behavioral manifestations of PTSD.  The State then asked these jurors to explain what behavioral manifestations they had observed.  This line of questioning then concluded with the State asking whether the jurors would hold these behavioral manifestations against a witness.  The jurors agreed that they would not and that they would use their common sense and experience in evaluating the testimony.

¶15   Falls Down did not object to the State's questioning until he began his general voir dire.  At that time, Falls Down moved for a mistrial, arguing that the questioning, in effect, bolstered and vouched for the State's main witness.  The District Court denied Falls Down's motion for a mistrial, finding that because the State did not mention the witness's name, no witness bolstering occurred.

¶16   Falls Down now appeals the District Court's judgment.

## ISSUE 1.

## Standard of Review

¶17   We review whether a court, in granting or denying a challenge for cause, has abused its discretion.  *State v. Good*, 2002 MT 59, ¶ 41, 309 Mont. 113, ¶ 41, 43 P.3d 948, ¶ 41.  If a court has abused its discretion in granting or denying a challenge for cause, we then determine whether a conviction should be set aside as a result of that error.  *Good*, ¶ 41.

4

**Discussion**

¶18 **Did the District Court err in denying four of Falls Down's challenges for cause?**

¶19 Falls Down argues that because the District Court erroneously denied his four challenges for cause, he had to use four of his six peremptory challenges to remove the jurors. In effect, Falls Down argues that the District Court denied him his statutorily entitled peremptory challenges. Further, Falls Down argues that even though the potential jurors indicated that they could be fair and impartial, that did not cure their biases. Thus, Falls Down argues that the error committed by the District Court in denying his challenges for cause was structural, requiring automatic reversal of Falls Down's convictions.

¶20 The State argues that the potential jurors' initial responses proved that they could be fair and impartial. The State also argues that only after further manipulation of the potential jurors' initial responses did their responses become unclear and seemingly biased.

¶21 We agree with the State.

¶22 According to § 46-16-115(2)(j), MCA, a potential juror can be challenged for cause if that potential juror "[has] a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party."

¶23 We held in *State v. DeVore*, 1998 MT 340, 292 Mont. 325, 972 P.2d 816, that jurors should be disqualified based on their prejudices only where they have "form[ed] fixed opinions or the guilt or innocence of the defendant *which they would not be able to lay aside*

5

*and render a verdict based solely on the evidence presented in court.*"  *DeVore*, ¶ 21, *overruled in part by Good* (quoting *Great Falls Tribune v. District Court, Etc.* (1980), 186 Mont. 433, 439-40, 608 P.2d 116, 120 (citations omitted) (emphasis added)).  Further, we noted that "[i]t is not a district court's role to rehabilitate jurors whose spontaneous, and thus most reliable and honest, responses on voir dire expose a serious question about their ability to be fair and impartial."  *DeVore*, ¶ 28 (holding that the District Court erred in denying DeVore's challenges for cause where two jurors stated that they thought DeVore was "guilty of something," and could not afford DeVore his presumption of innocence).

¶24     Given our jurisprudence, we turn to the specific questions and answers at issue under Falls Down's challenges for cause.  We will address and analyze the answers of each potential juror in turn.

¶25     The first potential juror, A.C., who was challenged for cause, stated the following upon questioning:

> COURT:     Have you formulated an opinion about the guilt or innocence of
>            Myron Falls Down?
>
> A.C.:      Not set in stone, no.
>
> COURT:     Could you be a fair and impartial juror in this case?
>
> A.C.:      I don't know the answer to that either.
>
> COURT:     Mr. Eakin.  [Counsel for the State]
>
> EAKIN:     Well, why do you have some doubt about whether you could be
>            a fair and impartial juror?
>
> A.C.:      Well, I'm not sure that what I've read or heard might not sway

> my opinion. I don't know. Never been in this spot before, so.
> . . .

EAKIN:     Okay. The Judge is going to instruct you that your decision in the case would have to be based solely on what you will hear or see in the courtroom. You understand that?

A.C.:      Yeah, I do.

EAKIN:     And so could you, then, follow the instruction that the judge gives you to just base your decision on what you will hear and see in the courtroom?

A.C.:      Probably, to the best of my ability.

¶26    When questioned by defense counsel (Mr. Selvey) about whether A.C. had formed an opinion regarding Falls Down's guilt, A.C. stated the following:

SELVEY:    Okay. Now, based on what you have read, did you make your own opinion about whether Mr. Fallsdown is guilty or not guilty?

A.C.:      Probably when I first read it I would assume that he was.

SELVEY:    And you still feel that way?

A.C.:      I don't know.

¶27    Here, A.C. initially stated that she had not firmly formulated an opinion regarding Falls Down's guilt. Any impartiality concerns she had arose from her having already heard and read about the case in the media. Unlike the jurors in *DeVore*, A.C.'s concerns did not arise from her unwavering belief that Falls Down was guilty. Indeed, A.C. stated that initially she assumed that Falls Down was guilty, but did not know if she still believed that when questioned by Mr. Selvey. Further, A.C. stated that she could follow the court's

7

instructions in basing her decision solely on the evidence presented in the courtroom. These facts demonstrate that A.C.'s opinion regarding Falls Down was not fixed. Accordingly, we hold that the District Court did not abuse its discretion in denying Falls Down's challenge for cause regarding A.C.

¶28 Potential juror J.B. stated that she had formed an opinion about Falls Down's guilt or innocence. When questioned about this opinion, J.B. stated the following:

> SELVEY: What is that opinion?
>
> J.B.: Basically, based upon my prior knowledge of just what I had heard prior to, you know, getting involved in this at all. I had presumed guilty just from my own personal perspective.
>
> SELVEY: Okay. Without having heard the other side of the story and the news clippings that you saw or read, why did you make a determination that he must be guilty then?
>
> J.B.: It was just based upon the information that was printed and that I heard that it sound like it was pretty factual.
>
> SELVEY: All right. And yet you still feel that you can, in actuality, blank that out of your mind and give this defendant the presumption of innocence that he's entitled to?
>
> J.B.: I think I can do that based upon the facts presented.

¶29 J.B. later clarified her statement that although she thought Falls Down was guilty, she also believed in the concept of the presumption of innocence. Specifically, J.B. stated: "That's just personal opinion compared to what you're doing in a court of law when you're making a decision based upon the facts that you're presented."

¶30 Here, J.B. initially presumed that Falls Down was guilty, based on what she had heard

8

and read in the media. However, again unlike the jurors in *DeVore*, J.B. was not set in her opinion. Indeed, she stated that she could set aside her opinion. She stated that she understood the difference between arriving at a personal opinion and making a decision based on facts presented solely in the courtroom. Thus, we hold that J.B.'s opinion regarding Falls Down's guilt was not fixed. Her testimony shows that she was able to set aside her personal opinion and base her decision on the facts presented in the courtroom. Accordingly, we hold that the District Court did not abuse its discretion in denying Falls Down's challenge for cause regarding J.B.

¶31 The third potential juror who was challenged for cause was D.R. He stated the following during questioning:

COURT: Have you formed any opinion about the guilt or innocence of Myron FallsDown?

D.R.: No.

COURT: Do you believe you could be a fair and impartial juror in this case?

D.R.: Yes.

SELVEY: Do you feel that Mr. FallsDown has to prove his innocence to you?

D.R.: Yeah, I would like to hear what he has to say, yes.

SELVEY: Okay. Well, how would you feel if Mr. FallsDown didn't present any evidence and didn't take the stand in his defense?

D.R.: That is a good question, I don't know. I really don't know how to answer that. I think he should take the stand, but I guess it would be his choice if he didn't want to take the stand.

SELVEY:    Would you--is it fair to say that him not trying to prove his innocence, it would be very negative in your view?

D.R.:    You know, I don't know. I really don't [k]now how to answer that. It just--I guess it depends on what the prosecutor had to say.

¶32    Here, D.R. initially stated that he had not formed an opinion about the guilt of Falls Down, and that he could be a fair and impartial juror. D.R. also stated that he would like to hear from Falls Down, but remained open to the fact that Falls Down may not testify. These statements demonstrate that D.R.'s opinion of Falls Down's guilt was not fixed. Indeed, that was his initial response. Accordingly, we hold that the District Court did not abuse its discretion in denying Falls Down's challenge for cause regarding D.R.

¶33    M.S., the fourth and final potential juror who was challenged for cause stated the following during questioning:

COURT:    Have you formed any opinion about the guilt or innocence of Myron FallsDown?

M.S.:    Yes, I have.

COURT:    Do you believe that you could be fair and impartial in this case?

M.S.:    I think I could.

EAKIN:    Now, this opinion that you have formed, that was based on what you had read in the newspaper and saw on the TV?

M.S.:     That is correct.

EAKIN:    Can you set that opinion aside and sit on the jury in this case and just decide this case based on what you hear and see in the courtroom?

M.S.:     Yes, I think I could.

SELVEY:   Ma'am, based on what you have read and seen on TV, what is your opinion about Mr. FallsDown as he sits before you, he is guilty or not guilty?

M.S.:     He is guilty.

SELVEY:   So realistically, how is it that you would set aside that opinion just because someone tells you to set it aside?

M.S.:     Because that is--that is why I am here, to set that aside if I am chosen as a juror. I mean, do we have a choice?

¶34    The above line of questioning continued, ending with the following:

SELVEY:   And I can assure you that no judge, no prosecutor or otherwise can just tell me to ignore my opinion about certain things. So can you just honestly ignore your opinion about what you feel, that Mr. FallsDown is guilty?

M.S.:     Yes, if I was in court, yes, I think I could.

¶35    Here, M.S. did initially state that she thought Falls Down was guilty. However, she continually stated that she could be a fair and impartial juror, even after Mr. Selvey questioned her on that point several times. M.S. believed if she was chosen as a juror that it was her job to set aside any personal opinions she may have. She consistently felt she could so. Her conviction, thereby, evidences that her opinion of Falls Down's guilt wavered,

11

unlike the jurors' opinions did in *DeVore*. Thus, we hold that the District Court did not err in denying Falls Down's challenge for cause regarding M.S.

¶36　In summary, we hold that the four jurors who were challenged for cause--A.C., J.B., D.R., and M.S.--showed that they could be fair and impartial, and the District Court did not abuse its discretion in denying Falls Down's four challenges for cause.

## ISSUE 2.

### Standard of Review

¶37　We review whether a court's findings of fact regarding a peremptory challenge are clearly erroneous. *State v. Ford*, 2001 MT 230, ¶ 7, 306 Mont. 517, ¶ 7, 39 P.3d 108, ¶ 7, *cert denied*, 537 U.S. 973, 123 S.Ct. 466, 154 L.Ed.2d 329. We apply *de novo* review to a court's application of the law. *Ford*, ¶ 7.

### Discussion

¶38　**Did the District Court err in denying Falls Down's objection to the State's peremptory challenge?**

¶39　Falls Down argues that the District Court erred in not making findings regarding his *Batson* argument when the State exercised its peremptory challenge in removing the only potential juror of a different ethnic background. Thus, Falls Down argues that he was denied his right to equal protection under the United States and Montana Constitutions.

¶40　The State argues that Falls Down did not make an appropriate *Batson* argument. In the alternative, the State argues that it provided a race-neutral explanation for exercising its peremptory challenge, thereby withstanding a *Batson* argument.

12

¶41　　We agree with the State that its race-neutral explanation withstands Falls Down's *Batson* argument.

¶42　　In *Ford*, we addressed *Batson* and its progeny for the first time. We reviewed the evolution of the *Batson* argument concerning jury composition. *Ford*, ¶¶ 11-20.

¶43　　In reviewing this evolution, we noted that peremptory challenges have long been essential to the trial process, and, indeed, have been said to be "one of the most important of the rights secured to the accused." *Ford*, ¶ 13 (quoting *Pointer v. United States* (1894), 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208). Unbridled use of peremptory challenges ceased in 1986 when the United States Supreme Court held, in *Batson v. Kentucky*, that prosecutors could not exercise their peremptory challenges on the sole basis of race. *Batson v. Kentucky* (1986), 476 U.S. 79, 84, 106 S.Ct. 1712, 1716, 90 L.Ed.2d 69.

¶44　　We noted that the holding in *Batson* extended to defense counsel, *Georgia v. McCollum* (1992), 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33, and to private litigants in a civil case, *Edmonson v. Leesville Concrete Co.* (1991), 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660, regardless of whether the potential juror shares racial identity with the defendant, *Powers v. Ohio* (1991), 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411.

¶45　　However, most important in our review of the *Batson* argument was adoption of the *Batson* requirements when raising such an argument in court. Specifically and initially, counsel making the argument must establish a prima facie case of purposeful discrimination. Then, counsel responding to the argument must articulate a race-neutral explanation in

exercising the peremptory challenge. Finally, the trial court must determine, through findings of fact, that counsel established a prima facie case of purposeful discrimination. *Ford*, ¶ 16. In addition, counsel must raise a *Batson* argument before the jury is sworn and before the venire is dismissed. *Ford*, ¶¶ 24-28.

¶46 Falls Down did not precisely articulate that he was relying on *Batson* for his argument. Indeed, he objected to the State's exercise of its peremptory challenge by citing "Battin." However, Falls Down did articulate his reason for such an argument, namely that R.M. was the only potential juror of a different ethnic background and should not be excluded.

¶47 We note, here, that the first requirement for establishing a *Batson* argument is effectively moot, since the State immediately responded as to why it exercised its peremptory challenge. Thus, we need not address whether Falls Down established a prima facie case of purposeful discrimination. However, we also note that the District Court did not make findings of fact regarding its reason for denying Falls Down's objection, namely that no prima facie case of purposeful discrimination existed. We reiterate the importance of adherence to these requirements in preserving the record on appeal. Notwithstanding, we conclude that the record here is sufficient for us to address the issue raised.

¶48 On these facts, we hold that the State provided a sufficient race-neutral explanation as to its exercise of its peremptory challenge. The State noted that its concern with R.M. arose not from her ethnic background, but rather from her experiences with assault cases. We hold that the District Court's denial of Fall's Down *Batson* argument was proper on the

14

facts here.

¶49 Because we hold that the District Court did not err in denying Falls Down's objection to the State's peremptory challenge, we need not reach the issue of whether the denial violated his right to equal protection under the United States and Montana Constitutions.

## ISSUE 3.

## Standard of Review

¶50 We review whether a court in granting or denying a mistrial has abused its discretion. *State v. Partin* (1997), 287 Mont. 12, 17-18, 951 P.2d 1002, 1005.

## Discussion

¶51 **Did the District Court err in denying Falls Down's motion for a mistrial or for additional individual voir dire when the State asked the jury about their knowledge regarding PTSD?**

¶52 Falls Down argues that the State vouched for and actually bolstered the credibility of its main witness by referencing PTSD, from which the witness suffers.

¶53 The State argues that its questioning of the jurors about the effects of PTSD was permissible so as to ascertain their understanding of the symptoms of the disorder. The State argues that this understanding was necessary to establish because the disorder might have affected the State's witness during trial.

¶54 Falls Down cites no authority to support his argument that the State vouched for its witness by questioning the jury about PTSD. Rather, Falls Down cites cases holding that prosecutors may not vouch for the credibility of a government witness. *United States v. Roberts* (9th Cir. 1980), 618 F.2d 530, 533, *cert. denied*, 452 U.S. 942, 101 S.Ct. 3088, 69

15

L.Ed.2d 957; *United States v. Frederick* (9th Cir. 1996), 78 F.3d 1370, 1378. These cases do not stand for the proposition that questioning about PTSD during voir dire amounts to witness vouching, however.

¶55    We have repeatedly held that it is not this Court's obligation to locate authorities or formulate arguments for the parties in support of their positions. *See Johansen v. State*, *Dept. of Natural Resources*, 1998 MT 51, ¶ 24, 288 Mont. 39, ¶ 24, 955 P.2d 653, ¶ 24.

¶56    Thus, given that Falls Down did not locate authority for his position, we will not address his argument here, and we affirm the District Court's denial of Falls Down's motion for a mistrial.

¶57    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶58 I dissent. I would reverse the conviction due to the court's failure to grant challenges for cause to two of the venirewomen who indicated that their state of mind would prevent them from acting with entire impartiality and without prejudice to the substantial rights of either party. Section 46-16-115(2), MCA.

¶59 Turning first to jury panelist A.C. This panelist advised the court that she had read about the case in the newspaper and, although she understood that what she read was not evidence, she was not sure that she could set aside the information and judge the defendant solely on the evidence or whether she could be fair and impartial. She indicated that she could "probably" follow the judge's instructions "to the best of [her] ability." When asked by defense counsel whether she felt Falls Down was innocent as he sat before her, she indicated, "I don't know if I can answer that. I don't know if he is or not." Counsel then inquired further as to her state of mind concerning his presumed innocence, to which she responded: "Hmm, that's a good question. I'm feeling very nervous." In telling fashion, she stated, "I really don't know. My first instinct would be that he certainly was involved in this at least. To what extent, I don't know."

¶60 When asked whether she would have a difficult time setting her opinion aside, A.C. said, "I would probably have a difficult time doing that. But if you want be here, we can make that happen." Defense counsel asked her if she could be fair and impartial and objective and not judge the defendant as she sat there today. A.C. said, "Well, I could try to

17

be, but I can't guarantee that, no." Clearly, when A.C. could not guarantee that she could be fair and impartial, her state of mind was such that it would prevent her from acting with entire impartiality and without prejudice to the rights of defendant Falls Down. The District Court abused its discretion in denying Falls Down's challenge for cause under § 46-16-115(2), MCA.

¶61 Prospective juror M.S. had also been exposed to information about the case in newspaper articles. As the dialogue quoted by the Court indicates, she unequivocally stated that she had formed an opinion about the defendant's guilt, "He is guilty." Although, the prosecutor got her to say that she would ignore her opinion if she were in court, she nonetheless conceded that if she were the defendant, she would not feel comfortable if a juror on her case held that opinion (as did she) that she was guilty. As with A.C., prospective juror M.S. clearly evinces a state of mind such that it would prevent her from acting with entire impartiality and without prejudice to the rights of defendant Falls Down. The District Court abused its discretion in denying Falls Down's challenge for cause under § 46-16-115(2), MCA.

¶62 A defendant charged with a crime is entitled to an impartial jury of his or her peers. Art. II, Sec. 24, Mont. Const. A district court should jealously protect this right by liberally granting challenges for cause leveled at veniremen and women who, like A.C. and M.S., clearly have formed an opinion about the defendant's guilt. With some forty-eight unchallenged, prospective jurors remaining on the panel, the court should have excused those jurors whose frame of mind was obviously tainted by exposure to news coverage and

18

moved on to panelists who could, without need of "coaxed recantations," be impartial and objective. *State v. Freshment,* 2002 MT 61, ¶ 12, 309 Mont. 154, ¶ 12, 43 P.3d 968, ¶ 12.

¶63    The District Court abused its discretion in denying the challenges for cause to A.C. and M.S., thereby forcing Falls Down to unnecessarily waste two of his six peremptory challenges to which he was entitled by law.  *State v. Williams* (1993), 262 Mont. 530, 537, 866 P.2d 1099, 1103, overruled in part by *State v. Good*, 2002 MT 59, 309 Mont. 113, 43 P.3d 948.  Falls Down's number of peremptory challenges was thus not equal to that of the State. *Armstrong v. Gondeiro*, 2000 MT 326, 303 Mont. 37, 15 P.3d 386.  As a result, Falls Down was denied his right to a fair and impartial jury and his right to due process of law.

/S/ W. WILLIAM LEAPHART