DA 07-0527

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 268

STATE OF MONTANA,

Plaintiff and Appellee,

v.

WILLIAM GUY HART,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 06-0720
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jim Wheelis, Chief Appellate Defender; Lisa S. Korchinski,
Assistant Appellate Defender; Helena, Montana

For Appellee:

Hon. Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General; Helena, Montana

Dennis Paxinos, Yellowstone County Attorney; David Carter, Victoria
Callendar, Deputy County Attorneys, Billings, Montana

Submitted on Briefs: October 8, 2008

Decided: August 14, 2009

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     On May 17, 2007, a jury assembled in the Thirteenth Judicial District Court convicted the Defendant William Hart of vehicular homicide while under the influence. Hart appeals his conviction, claiming that three errors rendered his trial unfair. We affirm.

¶2     We consider the following issues raised by the Defendant:

¶3     (1)   Did the District Court abuse its discretion by denying Hart's challenge for cause of prospective juror R.F.?

¶4     (2)   Did the District Court abuse its discretion by denying Hart's motion to exclude the video deposition of one of the State's material witnesses?

¶5     (3)   Did the District Court abuse its discretion by denying Hart's motion for a mistrial after the bailiff delivered video equipment to the jury room without receiving approval from the court?

## BACKGROUND

¶6     Around 10 p.m. on August 19, 2006, after spending the evening drinking beer with friends, Hart began his drive home. He refused an offer by Terrance McDonnell to pay for a taxi to take him home. On his way, Hart hit and killed a pedestrian, Jose Fraga. Witnesses reported that Hart's pick-up truck bounced up and down as it passed over Fraga's body, and dragged Fraga's body for some distance. There were no skid or scuff marks on the road, nor did Hart's brake lights illuminate to indicate he had braked at any

2

point before or after hitting Fraga. The State charged Hart with vehicular homicide under the influence, or in the alternative, negligent homicide.

¶7     The trial began on Monday, May 14, 2007 and lasted four days. Four DVDs were used at trial, including three patrol-car videos and a videotaped deposition of a witness. The court permitted the State to play the video deposition over Hart's objection that the witness was not unavailable for trial. All three patrol-car videos were admitted into evidence at trial. While the video deposition was played for the jury, it was not admitted as a trial exhibit. Prior to the parties' closing arguments, the court instructed the jury that they would be able to take into their deliberations "the instructions, the verdict form and all of the evidence that has been admitted, with the exception of the demonstrative evidence." Approximately twenty minutes after they began deliberating, the jury requested video equipment so they could watch one of the DVDs. The bailiff provided the jury with video equipment and cued up a patrol car video the jurors had selected to watch. A few minutes after cueing up the video, the bailiff informed the court of his actions, whereupon the court told the bailiff to remove the equipment immediately. At most ten minutes passed between the bailiff cuing up the DVD and his subsequent removal of the video equipment. Hart moved for a mistrial, which was denied by the court.

¶8     After deliberating for about an hour, the jury convicted Hart of vehicular homicide under the influence. Thereafter, the District Court sentenced Hart to thirty years in the

Montana State Prison. Hart appeals. Additional facts will be set forth herein as necessary.

## STANDARD OF REVIEW

¶9 We review a district court's decision to deny a challenge for cause to a juror, its evidentiary rulings, and its grant or denial of a motion for mistrial for abuse of discretion. *State v. Braunreiter*, 2008 MT 197, ¶ 7, 344 Mont. 59, 185 P.3d 1024 (denial of a challenge for cause); *State v. Spencer*, 2007 MT 245, ¶¶ 14, 41, 339 Mont. 227, 169 P.3d 384 (motion to exclude video testimony); *State v. Smith*, 2005 MT 18, ¶ 6, 325 Mont. 374, 106 P.3d 553 (grant or denial of a motion for mistrial). A court abuses its discretion if it makes a ruling arbitrarily, unreasonably, or without employing conscientious judgment, which results in substantial injustice. *Spencer*, ¶ 14.

## DISCUSSION

¶10 **Issue One: Did the District Court abuse its discretion by denying Hart's challenge for cause of prospective juror R.F.?**

¶11 Hart urges us to reverse his conviction on the ground that the District Court abused its discretion by failing to dismiss prospective juror R.F. Hart claims that R.F. exhibited actual bias against anyone who drives after consuming alcohol. The State responds that, while R.F.'s comments may have reflected his concern about drinking and driving, they did not reflect an actual bias that would have precluded R.F. from properly fulfilling the duties of a juror.

¶12 Both the federal and Montana constitutions provide defendants with a fundamental right to be tried before a fair and impartial jury. U.S. Const. amend. VI; Mont. Const. art.

4

II, § 24. In order to preserve this right, a defendant may remove biased jurors using challenges for cause during voir dire. Section 46-16-115, MCA. A court abuses its discretion if it fails to remove a prospective juror after actual bias is revealed during voir dire. *State v. Marble*, 2005 MT 208, ¶ 10, 328 Mont. 223, 119 P.3d 88. We will reverse a district court's decision and grant a defendant a new trial if three elements are met: (1) the court abused its discretion; (2) the defendant removed the prospective juror with a preemptory challenge; and (3) the defendant exhausted all of his preemptory challenges. *Braunreiter*, ¶ 7.

¶13 "Jurors should be disqualified based on their prejudices only where they have 'formed fixed opinions on the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict based solely on the evidence presented in court.'" *State v. Falls Down*, 2003 MT 300, ¶ 23, 318 Mont. 219, 79 P.3d 797 (citation omitted). However, a court need not dismiss a juror, despite the juror's expression of some concern regarding his or her ability to serve, if the juror believes he or she can remain impartial. *Braunreiter*, ¶ 10. According to § 46-16-115, MCA:

> (2) A challenge for cause may be taken for all or any of the following reasons or for any other reason that the court determines: . . .
>
> (j) having a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party.

District courts may question jurors in order to clarify a potential bias, but neither the court nor counsel should elicit "coaxed recantations" in order to rehabilitate a potential

juror. *Braunreiter*, ¶ 11. "To determine whether a juror must be excused for cause, courts must examine both the statutory language and the totality of the circumstances in a given situation." *State v. Robinson*, 2008 MT 34, ¶ 8, 341 Mont. 300, 177 P.3d 488. While we review a prospective juror's entire discourse during voir dire, we place greater emphasis on a juror's spontaneous statements. *Braunreiter*, ¶ 9. We give deference to district courts who sit in a "peculiarly advantageous position," wherefrom they may observe a juror's demeanor, expression, and manner of answering questions in order to discern the true bias of a potential juror. *State v. Bashor*, 188 Mont. 397, 408, 614 P.2d 470, 477 (1980) (citing *State v. Simpson*, 109 Mont. 198, 207, 95 P.2d 761, 764 (1939)).

¶14 During voir dire, defense counsel asked R.F. about his opinion on drinking and driving:

> DEFENSE COUNSEL: . . . So let's talk about sober. How sober do you have to be?
> PROSPECTIVE JUROR: A hundred percent sober in my opinion.
> DEFENSE COUNSEL: So even the slightest drop of alcohol in your opinion.
> PROSPECTIVE JUROR: In my opinion, yes.
> DEFENSE COUNSEL: And so if the law instructed you differently, then you'd have difficulty setting that aside, or would you have difficulty setting it aside?
> PROSPECTIVE JUROR: You know, I probably wouldn't, because that's what the law says, because my opinion is not the law. . .

Turning to burden of proof, defense counsel asked R.F. whether the Defendant had to prove anything:

> PROSPECTIVE JUROR: It's not your job to prove anything, it's the State's job.

6

DEFENSE COUNSEL:  So if the State doesn't prove that there was alcohol to a level of impairment, simply that there was alcohol, that's enough for you?
PROSPECTIVE JUROR:  They would have to prove it's alcohol to impairment by the law.  I don't know.

When asked how hard it would be to follow the law on a scale of one to seven, seven being the hardest, R.F. responded, "four or five."  Defense counsel then challenged R.F. for cause.

¶15    The court provided the prosecutor with an opportunity to voir dire R.F.  The prosecutor questioned R.F. further about his ability to apply the law and decide the case upon the evidence presented:

PROSECUTOR:  If we did not prove that beyond a reasonable doubt, in your mind, could you -- would you find him not guilty?
PROSPECTIVE JUROR:  If you couldn't prove that he was drinking and impaired, then I could find him not guilty.
PROSECUTOR:  And this is very important, because, I mean, what we're talking about is with the understanding of what impairment is.
PROSPECTIVE JUROR:  Right.
PROSECUTOR:  We're not talking the slightest degree or anything.
PROSPECTIVE JUROR:   I'm thinking more along the lines of, I know people that can't even have one glass of wine without tipping over, but yet their blood alcohol level is not -- you know, they're still at the legal limit to drive, but they're responsible enough not to, or I would hope so.
PROSECUTOR:  And I think this is a very interesting -- I mean, it is the concept.  I mean, the person that you described that had one beer, in that particular situation, do you think that they -- I mean, knowing who they are, would they be able to drive a motor vehicle safely?
PROSPECTIVE JUROR:  No.
PROSECUTOR:  Would you consider them under the influence?
PROSPECTIVE JUROR:  Yes.
PROSECUTOR:  Do you know people who can have one beer, okay, and not be affected to the point of where they couldn't drive their motor vehicle?
PROSPECTIVE JUROR:  Yes, I do.
PROSECUTOR:  So I mean, that is the distinction, correct?

PROSPECTIVE JUROR: Correct.

Without questioning the prospective juror itself, the court denied Hart's challenge for cause.

¶16 Upon review of the colloquy between prospective juror R.F. and counsel for both parties, we conclude R.F.'s responses do not reveal actual bias. It is clear from R.F.'s initial response that his personal opinions about drinking and driving would not govern his decision in the case. As he explained, it's "what the law says" that matters "because my opinion is not the law." R.F. expressed a proper understanding of the roles in a criminal trial, that the burden of proof is on the State, not the defendant, and that a juror must review all of the evidence presented before rendering a decision and follow the law. R.F.'s remark that it would be difficult for him to sit in judgment is not decisive. "If a prospective juror merely expresses some concern about remaining impartial, but believes he can lay aside any concerns and fairly weigh the evidence, the district court is not required to remove the juror for cause." *Robinson*, ¶ 10 (citing *Falls Down,* ¶¶ 27, 30, 32). R.F. did not exhibit the sort of "fixed state of mind" that we repeatedly hold should excuse a juror for cause. *Braunreiter*, ¶ 21. If anything, R.F.'s answers demonstrated qualities which are desirable in the search for a juror. He expressed his personal feelings honestly but recognized the law was superior and must govern the process. The District Court did not abuse its discretion by denying Hart's challenge for cause of prospective juror R.F.

¶17 **Issue Two: Did the District Court abuse its discretion by denying Hart's motion to exclude the video deposition of one of the State's material witnesses?**

8

¶18 On the night of the accident, Terrance McDonnell engaged in an argument with Hart during the gathering at the house of Michael Hope and Sylvia Creasey. McDonnell related to investigating officers that Hart appeared intoxicated and that Hart had refused McDonnell's offer to pay for a taxi to take Hart home. In March of 2007, the State attempted to serve McDonnell with a subpoena for trial, but was unable to locate him. The Billings Police Department learned that McDonnell had moved and had not left a forwarding address. In April, the State informed the court of its difficulty in locating McDonnell, and requested issuance of an arrest warrant in order to depose him. Specifically, the State told the court:

> After speaking with Mr. McDonnell's family, as well as former partner, it appears that he may be taking active steps to avoid any contact with law enforcement. Good cause exists to believe this witness, under his current situation, will not likely respond to a subpoena and will be unavailable for trial.

The State advised the court that it had attempted to locate McDonnell in Montana and Wyoming without success. Hart did not object to the State's motion for the arrest and deposition of McDonnell. The court issued the arrest warrant for McDonnell.

¶19 On April 26, 2007, officers at the Cheyenne Police Department reported that McDonnell had been located in Cheyenne, Wyoming. McDonnell appeared cooperative but told the officers he would lose his job if they arrested him. The Cheyenne officers thus sought further direction from the Billings Police Department, which responded that, under the circumstances, an arrest was not necessary. Thereafter, McDonnell's employer contacted the Billings Police Department and expressed concern about the request for

9

McDonnell to testify, stressing his reliance upon McDonnell's employment. McDonnell later informed the State that he would lose his job if he were to be absent the week of the trial, but indicated he could be available the week prior to the trial. Consequently, the State moved the court for issuance of a deposition subpoena for McDonnell on the ground that he would "be unavailable to testify at the trial." The State advised the court that defense counsel had been contacted and did not object to the motion. The court granted the State's motion, and on May 1, 2007, issued a deposition subpoena for McDonnell.

¶20 The deposition took place in Billings on Wednesday, May 9, five days prior to trial. Both Hart and his counsel were present at the deposition, at which time Hart's counsel cross-examined McDonnell. The entire deposition was recorded on video. While McDonnell was in Billings for the deposition, the State served him with a subpoena commanding his appearance at trial the next week. However, when McDonnell did not appear for trial, the State moved for the admission of the video deposition. Concluding that the State had followed appropriate procedures, the court admitted the video deposition over Hart's objection.

¶21 Hart argues the District Court abused its discretion by allowing the State to present the video deposition because McDonnell was not "unavailable." He contends the State did not exercise the required level of diligence under this Court's precedent, and that the admission of McDonnell's testimony by video violated his constitutional right to confront witnesses against him.

10

¶22 The State distinguishes previous cases where the admission of pre-recorded testimony was determined to have violated the defendant's constitutional rights, and asserts that, based on the totality of the circumstances, the prosecutor acted reasonably and in good faith. The State stresses that McDonnell was elusive, lived more than 350 miles from the courthouse, and feared that attending the trial would cause him to lose his job. The State notes its efforts to locate McDonnell and the service of a subpoena upon McDonnell for his trial appearance a week prior to trial. The State also argues that the use of a video deposition affords more safeguards for the protection of a defendant's confrontation rights than a deposition transcript, as the jury could view McDonnell's answers and demeanor just as if he had testified at trial.

¶23 Both the federal and Montana constitutions provide defendants with a fundamental right to confront the witnesses against them. U.S. Const. amend. VI; Mont. Const. art. II, § 24. Generally, this means that a witness must come to court to testify before the accused. However, in limited circumstances, the testimony of a witness may be recorded prior to trial and submitted in lieu of the witness's presence at trial. *See* §§ 46-15-201, 204 MCA; Mont. R. Evid. 804. Before a party may present testimonial evidence to the fact finder, the party seeking its admission must show: (1) the witness is unavailable and (2) the defendant has been provided with an opportunity to cross-examine the witness. *Crawford v. Wash.*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004). Hart does not argue that he was denied an opportunity to cross-examine McDonnell, but challenges the determination that McDonnell was unavailable.

11

¶24 A witness may be deemed unavailable if he is "absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means." Mont. R. Evid. 804(a)(5). The proponent of the testimony of an unavailable witness bears the burden of demonstrating it made a "good faith effort" to secure the witness's attendance at trial. *Barber v. Page*, 390 U.S. 719, 724-25, 88 S. Ct. 1318, 1322 (1968); *see also State v. Widenhoffer*, 286 Mont. 341, 351, 950 P.2d 1383, 1389 (1997). The lengths to which the prosecution must go to present a witness in person before the trier of fact is a question of reasonableness, based on the totality of the circumstances. *Widenhoffer*, 286 Mont. at 351-54, 950 P.2d at 1389-90; *see also Ohio v. Roberts*, 448 U.S. 56, 74, 100 S. Ct. 2531, 2543 (1980); *State v. LaCario*, 163 Mont. 511, 518 P.2d 982 (1974); *Lowery v. Anderson*, 225 F.3d 833, 840 (7th Cir. 2000); Mont. R. Evid. 804, comm. cmt.

¶25 In *LaCario*, we held the prosecutor did not take sufficient steps to procure the presence of two witnesses the State had not subpoenaed, and who appeared to testify at another criminal trial in the same county six days following LaCario's trial. *LaCario*, 163 Mont. 513, 518 P.2d 982. In *Widenhoffer*, although we declined to set forth a specific time frame within which the State could be said to have used "reasonable means" to procure a witness's attendance, we held that merely subpoenaing a witness on the eve of trial was insufficient. *Widenhoffer*, 286 Mont. 341, 950 P.2d 1383.

¶26 The facts of this case do not fit squarely into either *LaCario* or *Widenhoffer*. McDonnell left Montana shortly after the fatal incident, did not leave a forwarding

12

address, and eluded Billings police until Cheyenne law enforcement located him pursuant to an arrest warrant issued by the District Court. After McDonnell was located, the State requested the Court permit his deposition as a material witness, explicitly stating that McDonnell might not be available for trial. Hart offered no objection to the State's efforts to locate and depose McDonnell until the deposition began. At the deposition, five days before trial, the State attempted to compel McDonnell's attendance at trial by serving him with a subpoena. Although stating he would not refuse a subpoena, McDonnell did not appear at trial. Hart offers no issue which he was unable to address during McDonnell's deposition, nor does he point to any other specific prejudice that the use of the video caused him. Therefore, we conclude that the District Court did not abuse its discretion in playing the video deposition for the jury.

¶27 **Issue Three: Did the District Court abuse its discretion by denying Hart's motion for a mistrial after the bailiff delivered video equipment to the jury room without receiving approval from the court?**

¶28 The State presented four DVD's at trial, including three patrol-car videos and the videotaped deposition of McDonnell. The court admitted the three patrol-car videos into evidence. However, while the video deposition was played for the jury it was not admitted into evidence as a trial exhibit. The court instructed the jury that they would take into their deliberations "the instructions, the verdict form and all of the evidence that has been admitted, with the exception of the demonstrative evidence."[1]

---

[1] The DVDs were not denominated as demonstrative exhibits and were thus included in the materials taken to the jury room pursuant to the court's instruction. Later, in support of the motion for mistrial, the defense argued to the District Court that, regardless of

13

¶29    After deliberating for approximately twenty minutes, the jury asked the bailiff for equipment to watch one of the DVDs.  The presiding judge had stepped out for a short walk, so the bailiff delivered video equipment to the jury room and cued up the video that the jury had selected—one of the patrol-car videos.  According to the bailiff's statement, the jury shut off the videoplayer before the bailiff left the room.  A few minutes later, the bailiff informed the court of his actions, whereupon the court told the bailiff to remove the equipment.  The bailiff then re-entered the jury room and, finding the videoplayer shut off, removed the video equipment.

¶30    The court convened a meeting of the parties.  Under questioning by the court and counsel, the bailiff explained that he had cued up a patrol-car video of a daylight scene before the equipment had been turned off.  He explained that the equipment had been in the jury room between five and ten minutes at the time the court had instructed him to remove it, and that he estimated that the equipment had been in the room for a total of ten minutes.  The bailiff also explained that the jury notified him that it had reached a verdict about twenty minutes after he had removed the equipment.  Hart moved for a mistrial, contending that the jury's access to the evidence placed an undue emphasis upon it, thus violating due process.  The court denied Hart's motion, explaining that any potential undue emphasis or prejudice would be harmless based upon the short amount of time the jury had deliberated and the total amount of evidence presented at trial.

---

whether the DVDs had been denominated as demonstrative, it was inappropriate to allow them to be in the jury room and to be accessed by the jury.

¶31 Hart contends the District Court acted arbitrarily by failing to inquire as to what the jury had viewed in the jury room, and that the court's denial of his motion for mistrial caused substantial injustice to him. The State responds that Hart's arguments are based upon alleged facts not supported by the record and that, assuming the jury watched a DVD, all of the evidence contained on the videos was cumulative, and therefore any error was harmless.

¶32 First, the record indicates that the video deposition of McDonnell was not in the jury room and therefore could not have been viewed by the jury. The video deposition was not admitted into evidence as a trial exhibit, and therefore would not have been included in the materials sent to the jury room under the court's instruction.[2] This was confirmed by the prosecutor in his argument, and Hart did not contradict this statement. The conclusion of the parties during the mistrial discussion was that the DVD cued up by the bailiff, displaying a daylight scene, would have been the patrol-car video of Officer Watson.

¶33 Despite the court's failure to question the jurors regarding whether a video had been viewed and, if so, which videos they had watched, the record indicates the jury would have had only a brief opportunity to watch a video, given the few minutes they had access to the viewing equipment. As for the videos, Officer Chaney's patrol-car video displays the crime scene on the night of the accident. The video footage taken from Officer Nyquest and Officer Watson's patrol cars were taken while the officers first

---

[2] The Clerk indicated during the hearing that she had followed the court's instruction in delivering materials to the jury room.

interviewed Hart at his home the day after Fraga was killed. Both Officer Nyquest's and Watson's patrol car cameras remained motionless during the recording, showing a view of Hart's yard and a portion of Hart's vehicle parked at his residence. Neither Hart nor the officers are filmed on the video, although the officer's portable microphones recorded the audio portion of the interview. During this interview, Hart admits to hitting something at the same time and location that the victim in this case was struck. He also admits to having been drinking prior to driving his vehicle.

¶34 We previously recognized the common law rule that prohibits the submission of testimonial material to the jury for unsupervised and unrestricted review during deliberations. *State v. Bales*, 1999 MT 334, ¶ 19, 297 Mont. 402, 994 P.2d 17. Adherence to this rule prevents the jury from giving undue weight to one witness's statements to the exclusion of the evidence presented by other witnesses. *Bales*, ¶¶ 19-20. Montana law also provides the following exception to the general prohibition against jurors reviewing testimonial material during deliberations:

> After the jury has retired for deliberation, if there is any disagreement among the jurors as to the testimony or if the jurors desire to be informed on any point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. The information requested may be given, in the discretion of the court, after consultation with the parties.

Section 46-16-503(2), MCA.

¶35 Rather than following the protocol under the statute, the bailiff provided the materials to the jury without prior court approval, which was error. An error regarding the evidence is typically a "trial error," and neither party has argued that this involves a

16

structural error. When trial error has been committed, we determine whether the error was harmless under the circumstances. *State v. Van Kirk*, 2001 MT 184, ¶ 41, 306 Mont. 215, 32 P.3d 735. The defendant need only assert the "reasonable possibility" of prejudice. *Van Kirk*, ¶ 42. The burden rests upon the State to establish that any error committed was harmless:

> [I]n order to prove that trial error was harmless, the State must demonstrate that there is no reasonable possibility that the inadmissible evidence might have contributed to the conviction. To do this, the State must demonstrate that the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence and, qualitatively, by comparison, the tainted evidence would not have contributed to the conviction.

*Van Kirk*, ¶ 47.

¶36 The State contends, and we agree, that the DVDs could not have contributed to Hart's conviction, even if all three of them had been viewed by the jury. Regarding Officer Cheney's patrol-car video of the accident scene, the State introduced several photographs of the same scene portrayed on the video. Regarding the other DVDs containing audio recordings of Hart's interview, including his admissions, the State introduced blood tests matching the victim's blood to samples taken from Hart's vehicle, and witnesses testified about Hart's alcohol consumption and to his having admitted to hitting something or someone the night of the incident. Further, not only was other evidence admitted to establish the same facts, but the DVDs supported *both* the State's and Hart's case theories and were used by both sides. Hart stipulated to the admission of all three patrol-car videos. Both Hart and the State used the remarks made by Hart during the interview to support their respective theories of the case. Defense counsel argued

17

strenuously in his closing that Hart's responses and demeanor on the videos demonstrated his innocence.

¶37 Consequently, based on these circumstances and application of the *Van Kirk* error analysis, we conclude that any error committed by the bailiff in providing the jury with the video equipment without the court's permission did not contribute to Hart's conviction and was harmless. The District Court did not abuse its discretion in denying Hart's motion for a mistrial.

¶38 Affirmed.

/S/ JIM RICE

We concur:

/S/ BRIAN MORRIS
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JAMES C. NELSON