JUSTICE LEAPHABT,
dissenting.
¶47 I dissent on Issue Two. The Court does not fully engage in the required de novo analysis of the District Court’s application of Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986). As the Court states in the Opinion, we review a district court’s application of the law de novo. State v. Ford, 2001 MT 230, ¶ 7, 306 Mont. 517, 39 P.3d 108. If the Court engaged in thorough de novo review, it would have uncovered the State’s failure to meet the second prong of the Batson test, which requires that the prosecutor articulate a race-neutral explanation for exercising its peremptory challenge. State v. Ford, ¶ 16. A careful review of the transcript reveals that the explanation offered by the prosecutor was categorically not race-neutral under the standards established by Batson and its progeny.
¶48 To satisfy the second prong of Batson, the prosecutor must give a “clear and reasonable specific” explanation of his “legitimate reasons” for exercising the challenges. Batson, 476 U.S. at 98, n. 20 (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S. Ct. 1089, 1096 (1981). The U.S. Supreme Court later clarified this language, explaining that “legitimate reasons” must be those that do not deny equal protection. Purkett v. Elem, 514 U.S. 765, 769, 115 S. Ct. 1769, 1771 (1995). A denial of equal protection occurs if the decision-maker selected a particular course of action “at least in part ‘because of,’ not merely ‘in spite of its adverse effects upon an identifiable group.” Hernandez v. New York, 500 U.S. 352, 36, 111 S. Ct. 1859, 1866 (1991) (citing Personal Administrator of Mass. v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296 (1979)). This Court has held the following justifications to be race-neutral: a potential juror’s familial relation to the defendant, a potential juror’s personal experience and resulting biases related to assault cases, and a potential juror’s friendship with the defense attorney. State v. Falls Down, 2003 MT 300, ¶ 48, 318 Mont. 219, 79 P.3d 797; State v. Barnaby, 2006 MT 203, ¶ 55, 333 Mont. 220, 142 P.3d 809. Here, it is apparent from the transcript-evaluated in greater detail below-that the prosecutor devised a course of action “at least in part because of’ *206 its adverse effects on an identifiable group.
¶49 The prosecutor in James’s case asserted that he excluded Durglo because Durglo had expressed concerns over Tribal versus State court jurisdiction. However, race was inherent in his explanation. That is, excluding a Native American as a juror because of that person’s concern with Tribal court jurisdiction is not a race-neutral justification.[1] In addition to the justification speaking for itself, its non-race-neutral nature is supported by the District Court’s own observations during the Batson analysis and Durglo’s responses during voir dire, at which the prosecutor was present. After the prosecutor offered his explanation, the Court observed that Durglo’s concern carried with it “the sense that somehow that was a disrespect to the Tribal Court.” An analysis of Durglo’s responses in voir dire, which were the source of the prosecutor’s challenge, demonstrates that Durglo’s own Native American heritage and his views on the Tribal Court were inextricably linked. Durlgo’s voir dire responses are germane to Batson’s second step because the standard demands an inquiry into the source of the justification, which was Durglo’s response to questioning in voir dire.
¶50 In voir dire, prospective jurors were asked to indicate whether they were enrolled or enrollable members of a tribe or had some tribal affiliation. Only two jurors responded: Durglo and Rogers. The two self-identified tribal members were then asked whether their “feelings such that if you were sitting over there, that your feelings are so strong that, yeah, I couldn’t be fair about that.” Durglo responded: “It would probably sway me the way I think, because our own tribal system we got our own court system, why he’s not in our court system ....” It is obvious from Durglo’s responses that his identified tribal affiliation and concomitant views about his own tribe’s court system were inseparable. Because the second prong requires an inquiry into the source of a prosecutor’s explanation (to determine whether the prosecutor exercised the peremptory challenge “at least in part because of’ its adverse effects on an identifiable group), the origin of the prosecutor’s concern is both relevant and illuminating. The *207 prosecutor’s explanation arose out of Durglo’s unconcealed, tribal membership-based concern over why the case was not in “our court system.” Durglo’s use of the phrase “we got our own court system” suggests more than just a clinical concern about jurisdiction-a fact that was surely not lost on the prosecutor. In conjunction with the prosecutor’s later explanation, it is apparent that the justification was offered, at least in part, because of its adverse effect on an identifiable group: Native Americans.
¶51 It is clear from the record that a Batson violation occurred. It is this Court’s responsibility to review the District Court’s application of the law de novo. I therefore dissent to the Court’s lack of analysis in Issue Two.

 The prosecutor averred that his concerns about Durglo were “based on his comments regarding the jurisdictional issue. And I would have the same feeling if it was with a white person, Chinese person or otherwise expressing those feelings.” However, the U.S. Supreme Court held inBatson that such justifications fail under the second prong because they “rebut the defendant’s case by merely denying that he had a discriminatory motive” or affirming that he had “good faith” in making the selections. Batson, 476 U.S. at 98.